The People of the State of Illinois, Plaintiff-Appellee, *v.* James D. Trotter, Defendant-Appellant.

(No. 60162;

First District (1st Division)—March 17, 1975.

Paul Bradley and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael J. Goggin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Following a bench trial, the defendant was convicted of murder, and sentenced to imprisonment of not less than 20 years and not more than 60 years.

This appeal requires resolution of three questions: first, was the admission of hearsay evidence prejudicial to defendant; second, was a letter opener which might have been the murder weapon properly admitted into evidence; third, was clothing of the defendant admitted into evidence seized incident to a valid arrest. All three questions are answered by this court in the affirmative.

The homicide occurred in the early morning of Christmas Day 1971. The place was the apartment of defendant's estranged wife at 302 North Lotus in Chicago. The victim was a girl of 15 who was baby-sitting for defendant's 1-year-old child.

All the evidence was circumstantial. The defendant was at the apartment on Christmas Eve drinking with his wife, her sister and brother and two friends. Defendant left prior to 11:45 P.M. The victim was alive at approximately 1 A.M. on Christmas Day when defendant's wife phoned her. Within the next 15 to 30 minutes, the victim's mother called her and received no answer.

At approximately 3 A.M. defendant called the police from his wife's apartment to report the homicide. The police arrived a few minutes later and found the nude body of the victim lying on a bed in a pool of blood. She had been stabbed 15 times over her chest and abdomen and was

dead. Police officers testified there was quite a bit of blood on the victim.

A police officer testified that the defendant appeared to have been drinking quite a bit.

Defendant had one of three keys to the apartment. His wife and her mother had the other two. There was no evidence of forcible entry into the apartment. All the windows were locked and the back door was bolted shut with a steel burglar bar across it.

The apartment had the appearance of having been burglarized, yet a number of valuable items such as a phonograph, a camera and Christmas presents were in plain view and had not been taken. All the drawers of the dresser in the bedroom had been pulled out, but some of the contests were still folded and in order after having been taken out of the drawers. A plastic piggy bank, in which the defendant sometimes put money for his son, was cut open and currency and silver were missing. The missing money was not found on the defendant or in the apartment. Defendant's fingerprint, which a crime laboratory police officer testified was less than 24 hours old, was found on the piggy bank on Christmas morning. To put money into the bank, defendant would have had to touch it. Defendant's wife testified she had not seen defendant touch the bank on Christmas Eve but admitted that he had not been within her sight during the entire time he was in her apartment.

When questioned at his wife's apartment by a police officer, defendant said he had just arrived. Upon further questioning, the defendant informed the officer that he had been at the apartment earlier in the evening. The same officer testified that the inside flap of the defendant's trousers was visible, and that there were several little spots on it that appeared to be blood. The defendant told the police he had not touched the victim's body, and that the blood was his own from a cut he had suffered previously. Another police officer testified that he saw a dark circular spot on the top of the defendant's left shoe. One of the officers then told the defendant that because of the change in his story about when he first arrived at the apartment, he was going to be taken to the police station as a suspect. The defendant was given *Miranda* warnings.

At the police station, a police officer asked the defendant to give up his clothing and he agreed. The clothes were inventoried and sent to the police department's criminalistics division. A Chicago police department microanalyst testified as follows: Tests on the bloodstains on defendant's trousers showed that the blood type was not defendant's but was the same as the victim's. The spot on defendant's shoe proved not to be blood. A microscopic and chemical analysis of the sweater, coat and undershirt defendant was wearing at the time of his arrest revealed

minute flakes of material which tested positively as blood, but the quantity was insufficient to test further.

The police officers did not notice any blood on the sweater, coat or undershirt of defendant before sending them to the crime lab for testing.

Defendant's movements prior to calling the police on Christmas morning are significant because of the circumstantial character of the evidence. Defendant's sister-in-law testified that he was in her apartment at 5004 West End, Chicago, until about 12:45 A.M. A police officer testified defendant stated shortly after his arrest that after leaving his sister-in-law's he went to his own apartment at 1908 West Warren, Chicago, to see if he had left the door unlocked, and then took a bus to a lounge located at 4208 West Madison Street, Chicago, which he entered but left without having a drink because he did not know anyone there. Defendant, according to his statement to the police, then boarded a westbound Madison Street bus from which he disembarked at Lotus. He walked three blocks to his wife's apartment where, finding the door open and the victim on the bed, he called the police.

The lounge which defendant told the police he visited was boarded and closed on Christmas Eve and Christmas Day. However, another lounge within three or four doors of the one defendant stated he entered was open. Both lounges had fronts which were painted red.

On the morning of December 26, Police Officer Sanford went to the premises at 1908 West Warren, Chicago, where, he testified, he found the door to defendant's apartment unlocked. Officer Sanford also testified, over the objection of the defendant, that on December 26, a Mrs. Johnson, who lived on the second floor of the building at 1908 West Warren, told him that she last saw the defendant and the friend with whom he shared the apartment leaving their apartment on December 23, and that they had not returned. Officer Sanford also testified that according to Mrs. Johnson neither defendant nor the person who shared the apartment with him was there on December 26.

The court, in ruling on the objection to Officer Sanford's testimony, stated that the testimony would be admitted only to show that Mrs. Johnson saw neither the defendant nor his friend after December 23. Despite the restriction the court placed on the effect of this testimony, it was hearsay. Since Mrs. Johnson was not called as a witness, the defendant had no opportunity to cross-examine her on what she might have observed. *People v. Carpenter* (1963), 28 Ill.2d 116, 121, 190 N.E.2d 738, 741.

■■ The State urges that because of the presumption announced in *People v. Pelegri* (1968), 39 Ill.2d, 568, 575, 237 N.E.2d 453, 457, and

in *People v. Robinson* (1964), 30 Ill.2d 437, 439, 197 N.E.2d 45, 47, that in a bench trial the court has considered only proper and competent evidence, this court should conclude that the hearsay was ignored. However, the application of that presumption in this case is inconsistent with the ruling of the trial judge that the hearsay would be received for a limited purpose. For this court to indulge in the presumption that the hearsay was given no effect and that no attention was paid to it would be unrealistic in view of the ruling of the trial judge that it would be considered with the restriction placed upon it. *People v. Rice* (1972), 5 Ill.App.3d 18, 282 N.E.2d 526.

The State argues that in any event the hearsay evidence was harmless since the facts are established by other evidence and the record contains sufficient competent evidence to establish guilt beyond a reasonable doubt. To prove its circumstantial case, however, it is necessary for the State to show that defendant was at his wife's apartment a sufficient length of time on Christmas morning to commit the murder, clean up incriminating evidence and arrange the apartment in the way in which the police found it. By offering evidence relating to defendant's movements during the period between his departure from his sister-in-law's apartment and his call to the police, the State conceded their relevance.

The State attempted to place defendant at the murder scene long enough to have committed the murder by proof that he was not at the Warren Avenue apartment and that the lounge he claimed he visited was closed, thereby discrediting his account to the police of his movements on Christmas morning. The hearsay evidence, even as limited by the ruling of the trial court, had bearing on the factual determination of whether defendant was at his own apartment prior to his return to the place of the murder. Mrs. Johnson's observation suggested, contrary to defendant's statement to the police, that after leaving his sister-in-law he might have gone directly to his wife's apartment, and for that reason the hearsay was not harmless.

Because of the objectionable hearsay testimony, this case is being reversed and remanded for a new trial. The need for another trial makes it inappropriate for this court to express an opinion as to the defendant's guilt or to analyze or set forth the evidence in greater detail except as it relates to a letter opener which was admitted in evidence. *People v. Cook* (1965), 33 Ill.2d 363, 211 N.E.2d 374; *People v. Krittenbrink* (1915), 269 Ill. 244, 109 N.E. 1005.

■■ The defendant objected to the admission of the letter opener found by the police on the floor of the bedroom where the victim's body was lying. It belonged to defendant's wife and was kept in her bedroom. Neither blood nor fingerprints were found on the letter opener. The

coroner's pathologist, who examined the body, testified that it was totally compatible with the type of wounds the victim suffered although he declined to testify that the letter opener was the attack weapon. Its admission was proper. The pathologist's testimony sufficiently connected it with the crime and the defendant's presence in his wife's apartment sufficiently linked the letter opener with him to make it relevant. (*People v. Jones* (1961), 22 Ill.2d 592, 598, 117 N.E.2d 112, 116; *People v. Smith* (1972), 5 Ill.App.3d 648, 654, 283 N.E.2d 727, 731-732.) *People v. Reddock* (1973), 13 Ill.App.3d 296, 300 N.E.2d 31, on which defendant relies, is of no assistance since there the weapon was circumstantially linked to the crime, but there was no evidence that the defendant might have used the weapon or connecting him with it.

■■ The presence of the defendant in the apartment in the early morning hours with the body of the victim, the lack of evidence of forcible entry into the apartment, defendant having a key to the apartment, the defendant's change in his statement with respect to when he first arrived at the apartment, and the observation of what appeared to be blood on the defendant's trousers and shoe provided the police with probable cause to arrest the defendant. (*People v. Hester* (1968), 39 Ill.2d 489, 237 N.E.2d 466.) Because the arrest of the defendant was valid, it was proper for the police to request that he surrender his clothing for examination. (*People v. Hanna* (1969), 42 Ill.2d 323, 329, 247 N.E.2d 610, 614.) This request did not constitute an unreasonable seizure, and the trial court did not err in denying the defendant's motion to suppress the evidence obtained from an examination of the defendant's clothing. *People v. Fetterman* (1973), 14 Ill.App.3d 120, 302 N.E.2d 218.

For the reasons stated above, the judgment of the circuit court of Cook County is hereby reversed and the cause remanded for a new trial.

Reversed and remanded.

GOLDBERG and EGAN, JJ., concur.