THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STANLEY WRIGHT, Defendant-Appellant.

(No. 59682;

First District (2nd Division)—September 16, 1975.

Paul Bradley and Victoria J. Meyers, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

By jury verdict, defendant Stanley Wright was found guilty of murdering Steven Hearn and committing aggravated battery with a deadly weapon upon Bradford Crowell. Defendant was sentenced to 20 to 60 years for the murder and 3 to 9 years for the aggravated battery with a deadly weapon, the sentences to run consecutively.

On appeal the defendant raises a number of issues. We shall discuss only the following issues which are pertinent to our decision in this matter: (1) whether testimony elicited from a State's witness—the arresting

officer—and from the cross-examination of the defendant concerning the defendant's failure to claim self-defense at any time prior to his taking the witness stand was proper; (2) whether the court erred with respect to the jury instructions; (3) whether defendant, 17 years old at the time of the offense, was deprived of equal protection as guaranteed by the U. S. Constitution by provisions of the Illinois Juvenile Court Act making that act applicable to females under 18 and males under 17; and (4) whether the sentences and the fact that they are to run consecutively are excessive within the meaning of section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4). Other issues involving matters arising during the trial and whether the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt not pertinent to this opinion are not discussed in detail.

## *Evidence Before the Jury*

As this case is being reversed and remanded for a new trial, only so much of the record as is necessary for an understanding of our action will be set forth. At trial, four witnesses, Randy White, Gary Nolen, Reginald Cornelious and Bradford Crowell, testified for the State as to the circumstances of the incident. At approximately 6 p.m. on September 2, 1972, the four witnesses were in the vicinity of 4213 West 21st Place in Chicago along with the deceased. The defendant was walking on the opposite side of the street. Two witnesses testified the defendant was alone, and two witnesses testified there was another person with the defendant. All four testified that defendant was wearing a red jacket or coat and a red hat, that he shouted "Soul, Love" and that he removed a gun from his waistband and fired between three and six shots in the direction of the group. Crowell testified that one of the bullets struck his forehead for which he received six stitches. One of the men, Steven Hearn, was shot and thereafter died. Nolen, Crowell and Cornelious testified they observed no one else draw a gun or threaten the defendant, and White testified that he did not threaten the defendant or chase him down the street. Witness White testified he recognized the defendant from a party which he had previously attended. All four testified that they identified the defendant that evening in a line-up.

Officer Harold Szafranowski, of the Chicago Police Department, testified that he arrived at the scene at about 6:15 p.m. that evening, observed a body lying in the backyard of the house at that location, checked for vital signs and found none; that he ascertained the deceased to be Steven Hearn; and that he observed no weapons on or near the body.

Officer Arnold Cross, the arresting officer, testified that he went to

defendant's home that evening in response to a radio call. The defendant answered the door and Cross advised him of his rights. In response to questioning by the State, Cross testified that he asked defendant if he had anything to do with a shooting on 21st Street and that defendant "said he didn't have anything to say." Defendant's counsel, in a sidebar conference, moved that Cross's testimony be stricken and the jury admonished that defendant had a right to remain silent. The judge denied the motion. Cross further testified that his partner, Officer Siller, had asked defendant if he had changed clothes, and that defendant said he had. Clothes similar in color to those described by the four eyewitnesses as having been worn by the individual firing the shots were found on a chair in the room of the arrest.

Bessie Rowland, the deceased's sister, testified for the State that she saw Steven Hearn alive on September 1, 1972, and dead in the morgue on September 2, 1972. Lovie Hearn, the deceased's mother, was then called to the stand and testified that she saw the deceased alive at 4:45 p.m. on September 2, 1972. She next saw him when she arrived at the scene of the incident later that evening. After she stated that "I ran to [Steven Hearn] and put his head in my lap, and I tried to talk to him," defendant's counsel moved, at sidebar conference, that her entire testimony be stricken alleging she was put on the stand to have her cry before the jury. His counsel also moved for a mistrial. Both motions were overruled. The judge then excused himself from the court, and while the judge was gone from the bench, the witness began crying hysterically in the presence of the jury. The clerk removed her from the stand. In chambers, defendant's counsel renewed his motion for mistrial or, alternatively, admonishing the jury after making the judge cognizant of the witness's subsequent demeanor. In proceedings before the jury, the State withdrew the witness and the judge instructed the jury to wholly disregard the witness's demeanor.

Defendant testified he had transferred high schools because he had been threatened by Disciples[1]; that Gary Nolen, a State witness, had "threatened" him at Farragut High School by asking him whether he was a member of the gang. Additionally, he was purportedly threatened at a party where, he admitted, he had only talked to girls who, he further admitted, had not threatened him. Though he testified there were no other threats, defendant subsequently alleged that Randy White had, at a basketball game in 1971, threatened him and then that he had

---

[1] Testimony of various witnesses indicated that the "Disciples" was a neighborhood street gang or club.

"struck" defendant. The defendant alleged he had not reported this incident to the police. After being reminded of earlier contradictory testimony, defendant then stated that he *had* told the police.

As to the incident itself, defendant twice said he left home in the clothes Cross found him dressed in and did not change them in the interim; that he was on his way to visit a friend, Tyrone Doherty, and since Doherty lived in a neighborhood defendant allegedly feared, David Wright, a friend, not related to defendant, gave defendant a gun and defendant went into the neighborhood alone; that when he reached the street upon which the incident occurred, he observed a group standing in front of the house at 4213 West 21st Place; and that one member of the group, who he believed to be Randy White, pulled out a gun and shot at him three or four times while running after him. In response to questioning objected to as "improper," defendant said he had never told anyone including his attorney that Randy White had been firing a gun at him. The objection was overruled.

The trial court, in its instructions, gave a definition of murder as provided in Illinois Pattern Jury Instructions Criminal No. 7.01 which does not include the phrase "without lawful justification." Defendant did not object to the giving of this instruction. Defendant did not tender or object to the absence of an instruction relating to voluntary manslaughter.

In closing argument, the State emphasized the change of clothes as evidence of defendant's guilt and defendant's denial that he had changed clothes as further evidence of his guilt. It also indicated the impossibility of defendant's story in relation to where the body had been found. It characterized defendant's alleged actions as "slaughter on the streets." In defendant's closing argument, counsel described the State's eyewitness testimony as "pat," analogized the fact that they did not testify against one another as "just like the Mafia," and depicted the neighborhood of the incident as a "jungle." On rebuttal, the State pointed out contradictions in defendant's testimony concerning the alleged threats, accused the defendant of "lying"—which was not objected to—emphasized the *defendant's* (but not Cross's) testimony that he failed to tell anyone of his having been shot at, and remarked that either defendant or Cross was "lying" about the change of clothes. An objection to this latter remark was sustained. The State further characterized defendant's case as being that defendant was a "victim of society, a victim of circumstances," an objection to which was also sustained, agreed that the area was a jungle "because of murderers like him" (not objected to), and depicted the defendant as a "murderer in lamb's clothes."

## I.

The decisive issue is whether the trial court erred in improperly admitting testimony on behalf of the State regarding defendant's refusal to answer questions and the defendant's failure to inform anyone, including his attorney, of his claim of self-defense. The State contends that such testimony was admissible under *Harris v. New York* (1971), 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643, and that, in any event, its admission was not prejudicial. Defendant contends that such testimony goes beyond the *Harris* exception to the *Miranda* rule, and that its admission constituted prejudicial error.

Long before the United States Supreme Court held, in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, that defendants have a right to remain silent in the face of police interrogation, the Illinois Supreme Court held it was error for the State to offer testimony as to defendants' refusal to make a statement. In *People v. Rothe* (1934), 358 Ill. 52, 57, 192 N.E. 777, this refusal had been offered, as here, by the testimony of an officer. As clarification for its reversal, the court stated "the fact that [the defendants] refused to make a statement had no tendency to either prove or disprove the charge against them. The admission of this evidence was prejudicial, and since it was neither material nor relevant to the issue being tried it should have been excluded." This rule was reaffirmed by the court in *People v. Lewerenz* (1962), 24 Ill.2d 295, 299, 181 N.E.2d 99. Our review of the Illinois cases cited by the State in support of its contention either involve prior inconsistent *statements* or are distinguishable on other grounds.

In *Harris v. New York* the United States Supreme Court held to be constitutionally permissible the admission of prior inconsistent statements once defendant has taken the stand and offered testimony *contradictory* to his earlier statements. The *Harris* court was concerned about a defendant blithely committing perjury while potentially impeaching statements are prohibited from admission by their origin in *Miranda* violations. (401 U.S. 222, 224-26.) In subsequent interpretations of *Harris, United States v. Ramirez* (5th Cir. 1971), 441 F.2d 950, 954, held a failure to speak and *United States ex rel. Burt v. New Jersey* (3rd Cir. 1973), 475 F.2d 234, 236, a failure to act to be admissible under *Harris* as inconsistent with later assertions of defense, while *Johnson v. Patterson* (10th Cir. 1973), 475 F.2d 1066, 1067-68, and *United States v. Anderson* (D.C. Cir. 1974), 498 F.2d 1038, both held questioning of the defendant, as to prior failures to assert defenses, to be reversible error. In each of the foregoing cases, based on *Harris*, the defendant took the witness stand and was subjected to cross-examination out of which arose the contested issues.

The Supreme Court, in the exercise of its supervisory authority over

the lower Federal courts, recently ruled on the issue before this court in *United States v. Hale* (1975), 422 U.S. 171, 45 L.Ed.2d 99, 95 S.Ct. 2133.[2] In *Hale*, upon cross-examination of the defendant, the prosecutor caused Hale to admit that he had not offered exculpatory information to the police at the time of his arrest. The trial court instructed the jury to disregard the testimony. The Supreme Court did not consider this procedure sufficient to purge the prejudicial effect and held that:

> "If the Government fails to establish a *threshhold inconsistency* between silence at the police station and later exculpatory testimony at trial, proof of silence lacks any significant probative value and must therefore be excluded." (Emphasis added.) 422 U.S. 171, 176, 45 L.Ed.2d 99, 104, 95 S.Ct. 2133, 2136.

It is equally clear that the admission in the present case was not harmless error. The jury was generally aware that defendant had been "advised of his rights," but no connection was made between the defendant's right to remain silent and his failure to answer police interrogations about the shooting or to inform anyone of his self-defense claim prior to testifying. Moreover, the prosecutor not only brought out these failures on direct examination of Officer Cross and on cross-examination of the defendant— on both of which occasions defendant's counsel objected—but also emphasized and drew conclusions from the defendant's testimony in his closing arguments. The fact that in this case defendant was in his home at the time the police officer questioned him—as contrasted to custodial interrogation in *Hale*—is not such a significant difference as to justify the State's use of this approach.

The State, intriguingly, attempts to characterize the cross-examination of defendant on this subject as a *cure* of any error in admitting Cross's testimony. In the case it cites for support, *People v. Jenkins* (1st Dist. 1973), 10 Ill.App.3d 588, 592, 295 N.E.2d 123, the curative testimony consisted of an admission by the defendant on *direct* examination of the crime charged volunteered by him in order to interpose an affirmative defense that he was a narcotics addict. Here the defendant's admissions— that he did not tell the police that he shot in self-defense—were brought out by the prosecutor on cross-examination, which procedure was objected to by the defense. Even had the testimony been brought out in a different manner, we question whether it would be curative of the original error, as in *Hale*. In *Hale* the court noted that:

> "[P]ermitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference that the jury

---

[2] *Hale* was a codefendant in the case of *United States v. Anderson.*

is likely to draw from the fact that the defendant remained silent at the time of his arrest." 422 U.S. 171, 176, 45 L.Ed.2d 99, 107, 95 S.Ct. 2133, 2138.

■■ Considering the present state of the law, as we have noted, we are of the opinion that it was error for the State to elicit testimony in its case as to defendant's silence and failure to assert his self-defense claim prior to testifying. (See *People v. Queen* (1974), 56 Ill.2d 560, 310 N.E. 2d 166.) In doing so we are not unmindful that such holding does, in fact, restrict the scope of the right of cross-examination and may on occasion inhibit the search for truth—a goal the United States Supreme Court has had cause to praise several times in light of the capacity of flexible cross-examination to probe and test credibility. (*Alford v. United States* (1931), 282 U.S. 687, 692, 75 L.Ed. 624, 51 S.Ct. 218; *Tla-Koo-Yel-Lee v. United States* (1897), 167 U.S. 274, 42 L.Ed. 166, 17 S.Ct. 855; *Pointer v. Texas* (1965), 380 U.S. 400, 404-5, 13 L.Ed.2d 923, 85 S.Ct. 1065.) But in the clash of these rights, the fifth amendment right under the Federal Constitution and section 10, article 1 of the 1970 Illinois Constitution prevails.

## II.

Defendant urges there was error committed by the trial court with respect to the instructions given to the jury. As we have previously noted, the case must be reversed and remanded for a new trial for reasons other than the instruction issue. Although normally it would not be necessary to discuss the instruction issue because there will be a new trial, we deem it necessary to point out certain matters which might arise in a new trial.

## A.

Defendant urges that the jury was improperly instructed on the law regarding murder in that they were not informed that the defendant's conduct must have been *without lawful justification*. At trial the jury was given IPI Criminal No. 7.01 defining the offense of murder. Defendant now argues that since this instruction did not use the words "without lawful justification," the jury was improperly instructed on the law. We have noted that defendant at trial did not object to the giving of this instruction, and the failure to object to proposed instructions generally operates as a waiver of any objection. (*People v. Mallett* (1970), 45 Ill. 2d 388, 397, 259 N.E.2d 241.) Here, however, we believe it necessary to discuss the issue in detail.

In addition to the instruction defining murder and instruction 7.02

which sets forth the issues in murder; the trial court also gave to the jury IPI Criminal No. 24.06 concerning the use of force in the defense of a person.

Section 9—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—1) defines murder in pertinent part as: "[a] person who kills an individual *without lawful justification* commits murder if, &ast; &ast; &ast;" he or she commits certain acts causing the death of another. (Emphasis supplied.) Section 9—2 of the Criminal Code in defining voluntary manslaughter likewise uses the term "without lawful justification." IPI Criminal No. 7.03 defines voluntary manslaughter and does not use the phrase "without lawful justification." In *People v. Robbins* (1st Dist. 1971), 1 Ill.App.3d 651, 274 N.E.2d 908 (abstract opinion); this court held that the omission of the phrase "without lawful justification" in IPI No. 7.03 was not error where the jury was informed by other instructions, including a self-defense instruction, that a finding of guilty was dependent on the action of the defendant having been performed without lawful justification. In *Robbins* the trial court gave an instruction which was based on IPI Criminal No. 25.05 which covers the issues in the defense of justifiable use of force. In No. 25.05 the elements of the crime are set forth as well as the important requirement that the State prove "[t]hat the defendant was not justified in using the force which he used."

■■ In this case, neither party tendered, nor did the trial court give IPI No. 25.05. Thus when considering all the instructions as a whole, as we must (*Robbins, supra; People v. Mills* (1968), 40 Ill.2d 4, 15, 237 N.E.2d 697), the omission of IPI No. 25.05 resulted in error. When an affirmative defense of self-defense is raised as here, the appropriate issue instruction must be given in order that the jury understands that the State must prove beyond a reasonable doubt that the defendant was not justified in using the force which the defendant's evidence claimed was used. See *People v. Williams* (1974), 57 Ill.2d 239, 311 N.E.2d 681.

### B.

Defendant also contends that the trial court erred, based on the evidence, in not instructing the jury as to voluntary manslaughter as defined by section 9—2(b) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 9—2(b)). On the other hand the State contends that the defendant's failure to tender such an instruction precludes him from raising this issue on appeal. Of course we need not consider the issue in view of our remanding of the case for a new trial. We assume on retrial, instructions based on the evidence will be presented by the parties and given by the trial court. See *People v. Dortch* (1st Dist. 1974), 20 Ill.App. 3d 911, 314 N.E.2d 324.

Where instructions as to manslaughter have been tendered by the parties in a murder trial, the courts have held such an instruction should be given if there is evidence in the record to support a finding of manslaughter. (*People v. Papas* (1942), 381 Ill. 90, 94-95, 44 N.E.2d 896; *People v. Handley* (1972), 51 Ill.2d 229, 235, 282 N.E.2d 131, *cert. denied*, 409 U.S. 914; *People v. Craven* (1973), 54 Ill.2d 419, 425-26, 299 N.E. 2d 1.) Where, however, the evidence clearly demonstrates that the crime is murder and there is no evidence to support a conviction of manslaughter, a tendered instruction should *not* be given: (*People v. Handley* (1972), 51 Ill.2d 229, 235.) Voluntary manslaughter occurs only where defendant's actions are caused by serious provocation or where defendant believes his actions to be justified and such belief is unreasonable.

## III.

■■ Defendant urges that for a number of reasons the misconduct of the prosecutor denied him a fair trial. We need only consider one which might arise on retrial. Defendant argues that he was prejudiced when the State called the mother of the deceased as a witness. During her testimony she began to weep and was removed from the courtroom. Immediately thereafter the trial judge carefully admonished the jury to disregard the emotional reaction of the witness in arriving at their verdict.

Where a defendant chooses to go to trial, the State is entitled to prove every element of its case. In a murder trial this includes the fact that a death occurred and the State is entitled to call what is commonly termed a life-and-death witness. (*People v. Speck* (1968), 41 Ill.2d 177, 242 N.E. 2d 208.) Here, the deceased's mother was a life-and-death witness and was also present at the scene of the shooting immediately after it occurred. The fact that a life-and-death witness is often a close relative and may break out in tears on the witness stand has been held not to constitute reversible error even where the jury is not admonished to disregard the emotional reaction of the witness. (*People v. Hairston* (1st Dist. 1973), 10 Ill.App.3d 678, 686, 294 N.E.2d 748.) In the case at bar, after the witness was removed from the courtroom, the trial judge immediately admonished the jury not to be influenced by the emotional reaction of the witness. Under these facts, we conclude that the defendant was in no way prejudiced.

## IV.

■■ Defendant's next contention is that he was denied equal protection of the law when at age 17 he was tried as an adult, whereas if he were a female he would have received the protection of the Juvenile Court Act. The supreme court has recently held that the treatment of a 17-year-old

male as an adult does not deprive him of equal protection of the law. *People v. Ellis* (1974), 57 Ill.2d 127, 134, 311 N.E.2d 98; *People v. Seets* (1974), 57 Ill.2d 213, 311 N.E.2d 97.

## V.

Defendant contends that his consecutive sentences of 20 to 60 years for murder and 3 to 9 years for aggravated battery are excessive and should be made to run concurrently. Section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4) states that the court shall not impose a consecutive sentence unless "having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, * * *." Under this section, the trial judge is given the discretion to impose consecutive sentences. By our action in this case, the sentences will be vacated and therefore this issue is no longer viable. However, the sentences imposed upon the defendant were within the statutory limits as provided by the Unified Code of Corrections.

## VI.

Amongst the other errors urged by the defendant, we need only comment on his contention that the evidence was not sufficient to establish defendant's guilt beyond a reasonable doubt. As we are remanding this cause for a new trial, we do so on the basis that certain evidence was presented to the jury which should not have been elicited. It would be inappropriate for us to comment on this question as the evidence on retrial will exclude the improper testimony. Suffice it to say that the testimony of four eyewitnesses, as in this record, is sufficient to withstand a motion for directed verdict at the close of the State's case.

For the reasons set out herein the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Judgment reversed and remanded.

STAMOS and LEIGHTON, JJ., concur.