THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT MONAGHAN, Defendant-Appellant.

First District (1st Division)   No. 62459

Opinion filed July 12, 1976.—Modified upon denial of rehearing August 20, 1976.

James J. Doherty, Public Defender, of Chicago (Daniel E. Radakovich and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Edward V. Vienuzis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Defendant, Robert Monaghan, was indicted along with James Kemper for an armed robbery of a desk clerk at a hotel on the north side of Chicago in the early morning hours of December 1, 1973. Kemper was found unfit to stand trial. In his trial before a jury, defendant did not dispute that he had taken part in the robbery, but claimed that Kemper had compelled him to participate. Defendant was found guilty of armed robbery and sentenced to a term of 6 to 18 years. Because the defendant's conviction is being reversed on the ground that trial errors deprived him of his constitutional right to due process and the case is being remanded for a new trial, it is inappropriate for this court to express an opinion as to defendant's guilt or to analyze or set forth the evidence in greater detail than necessary to resolve the issues dealt with in this opinion. *People v. Cook* (1965), 33 Ill. 2d 363, 211 N.E.2d 374; *People v. Wright* (1975), 32 Ill. App. 3d 736, 738, 746, 336 N.E.2d 18; *People v. Trotter* (1975), 27 Ill. App. 3d 136, 326 N.E.2d 524; *People v. McKinney* (1970), 126 Ill. App. 2d 339, 348, 261 N.E.2d 797.

The defendant testified that he was in an apartment on the north side of Chicago in the early morning hours of December 1, 1973, when Kemper arrived. Kemper commenced arguing with another occupant of the apartment (Thomas Brown), saying that he wanted to go out and get some money. Kemper fired a shot at Brown, but missed. He then ordered the defendant to go out with him to get some money, and shot at the defendant, narrowly missing. At this point defendant left the apartment with Kemper and they walked around for a period of time. During their walk, Kemper drew his gun a few times and warned the defendant to do

as he said. Defendant took part in the armed robbery and returned to the apartment with Kemper.

Brenda Galaviz, who was Kemper's sister, and who was occupying the apartment with Brown, testified that after Kemper and the defendant left she called the police to report a disturbance in the apartment.

Chicago Police Officer Posselt testified that he received a radio communication regarding the robbery and proceeded to the hotel where he obtained a description of the robbers. This information was transmitted to other police cars in the area. Chicago Police Officer Yunker testified that after receiving a general flash radio message about the robbery and the description of the robbers, he received a report of a disturbance at the apartment occupied by Brown and Galaviz and was directed to investigate. When Officer Yunker arrived at the apartment, Galaviz admitted him, and the officer had a brief conversation with her and Brown. Galaviz told the officer that Kemper had fired two shots. Yunker saw the defendant and Kemper, who by that time had returned to the apartment, sitting in the front room. After the officer recovered a gun from the bedroom and started to interview those present in the apartment, he noted that Kemper and the defendant fit the description of the robbers in the flash message concerning the robbery. Officer Yunker placed the two men under arrest and they were transported to the police station. Officer Yunker testified he informed the defendant of his rights. The defendant made no statement to Officer Yunker, and the record does not show the defendant made any statements at the police station.

The defendant contends that the State improperly drew attention to his failure to inform the police that he had been compelled to commit the robbery. During cross-examination, the Assistant State's Attorney asked defendant the following questions:

> "Q. What did you do when the police told you they were taking you to the police station with Kemper?
>
> Defense counsel: Object.
>
> Q. What did you do?
>
> Defense counsel: Asked and answered.
>
> The Court: Proceed.
>
> A. What did I do when they told me they were taking me to the police station?
>
> Q. Right.
>
> A. I didn't say anything."

The Assistant State's Attorney's closing argument included the following comments:

> "Assistant State's Attorney: There was not a single witness brought into this court room to tell you that Mr. Monaghan had told this story before. He told—

Defense counsel: Objection, if the Court please.

Assistant State's Attorney: He told the story to the jury.

The Court: The jury is the finder of the facts. If the jury finds those facts are in evidence they will consider it, otherwise they will disregard it and I will instruct the jury at the termination of the arguments. Go ahead.

Assistant State's Attorney: Put your — [Defense counsel] talks about reasonable men. Now, it is not up to [defense counsel], it is up to you 12 collectively.

Think about yourself, think about what you would do under these alleged circumstances. What is the first thing you would do when the police got there? What is the first thing you would do when you got to the police station? What is the first thing you would do when you got to court?

Defense counsel: I must object.

Assistant State's Attorney: What is the first thing you would do if what they say really happened? They can't escape that fact, they didn't talk to you about it in their argument, I wonder why.

They can't escape the realism of what occurred that night. They can't change that. If the police officers told you that Galaviz and Brown didn't mention any of this nor did anyone else, that is inescapable and that is a fatal flaw in the so-called compulsion defense."

Although this argument was in part concerned with the failure of Galaviz and Brown, who both testified, to tell the police that Kemper had compelled the defendant to accompany him, it also clearly refers in part to the defendant's pretrial silence. The defendant contends that the prosecutor's comments penalized him for the exercise of his constitutional right to remain silent, and that he was denied due process by the prosecutor's comments concerning his silence.

The State replied first, that evidence of the defendant's pretrial silence was "volunteered" by the defendant on his cross-examination, and was, therefore, a proper subject of comment in closing argument. The State next argues that the defendant waived his fifth amendment rights because the objections raised were either general in nature or based on improper grounds (*e.g.*, that the question has been "asked and answered"). Finally, the State contends that the defendant put his credibility in issue by testifying, and that the defendant's pretrial silence was inconsistent with the defense he asserted at trial that Kemper had compelled him to participate in the robbery.

The defendant's answer on cross-examination that he "didn't say anything" was not volunteered. It was a reasonable and logical response to the question propounded asking what he did when the police told him

they were taking him to the station. A reasonable interpretation of the question, "What did you do?" was to regard it as encompassing what, if anything, he had said to the police.

■■ The argument that defendant waived his fifth amendment rights because his objections were not specific enough or on improper grounds is rejected. Defense counsel did object to the prosecutor's questions and his conduct, even though he failed to advise the court and the State that the basis of his objection was invasion of the defendant's fifth amendment rights or on due process grounds. Plain error affecting substantial rights may be noticed although not brought to the attention of the trial court. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a); see *People v. Howell* (1975), 60 Ill. 2d 117, 120-21, 324 N.E.2d 403; *United States v. Semensohn* (2d Cir. 1970), 421 F.2d 1206, 1210; *United States v. Brinson* (6th Cir. 1969), 411 F.2d 1057, 1059.) The prosecutor's comments on the defendant's silence constitute plain error, especially in view of the recent decision of the United States Supreme Court in *Doyle v. Ohio* (1976), ___ U.S. ___, 49 L. Ed. 2d 91, 96 S. Ct. 2240.

In *Doyle*, the Supreme Court held that due process precluded a state prosecutor from impeaching a defendant's exculpatory testimony, offered for the first time at trial, by cross-examining the defendant about his failure to have informed the police of his explanation after receiving *Miranda* warnings at the time of his arrest. The court stated that silence under such circumstances was "insolubly ambiguous" in that it could be a response to the *Miranda* warnings rather than an admission that the person arrested had no defense. It also stated that *Miranda* warnings contained an implied assurance that the arrestee's silence would not jeopardize him. To permit defendant's silence to be used to attack his credibility when he testified at the trial would be inconsistent with the holding in *Doyle*. *Doyle* mandates reversal of defendant's conviction and a new trial.

This result is also mandated by several Illinois cases which hold that a defendant's silence at the time of arrest cannot be used against him. (*People v. Lewerenz* (1962), 24 Ill. 2d 295, 181 N.E.2d 99; *People v. Owens* (1975), 32 Ill. App. 3d 893, 897, 337 N.E.2d 60; *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18; *People v. McLean* (1971), 2 Ill. App. 3d 307, 276 N.E.2d 72.) *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166, is distinguishable since at the time of his arrest the defendant there made statements to the police, but failed to tell them of the explanation for his conduct which he gave at trial. The court noted that "we do not have the question presented of the right of the accused to remain silent." (56 Ill. 2d 560, 564.) It is this precise question which is presented in this case. The State has not argued that the error was

harmless, and since the credibility of the defendant was a crucial element of this case, the State could not successfully take this position.

Only one of the remaining issues raised by the defendant is sufficiently serious and likely to recur in a new trial to merit discussion here. This is whether the trial judge erred in holding that Brown could not testify on the compulsion issue until the defendant had provided a foundation for such testimony.

The defense called Brown to testify before the defendant took the stand. Defense counsel began to ask Brown questions about Kemper's character and reputation. The State objected, asserting that no foundation had been laid for the defense of compulsion, and that Kemper's character and reputation were, therefore, not in issue. The court agreed, and defense counsel withdrew the witness. The defendant was then called as the next witness and Brown testified later.

The defendant asserts that the trial court's ruling requiring the defendant to testify before Brown violated the defendant's privilege against self-incrimination and his right to effective assistance of counsel. The defendant relies on *Brooks v. Tennessee* (1972), 406 U.S. 605, 32 L. Ed. 2d 358, 92 S. Ct. 1891.

■■ In *Brooks*, the Supreme Court invalidated a statute which forced a defendant to testify as the first witness or to be precluded from testifying regardless of the factual or evidentiary circumstances or the order in which his counsel wished to present witnesses. In this case, the judge merely ruled that evidence relevant to the defense of compulsion was not admissible until the defense laid a foundation by introducing some evidence showing the existence of that affirmative defense. (See *People v. Gibson* (1944), 385 Ill. 371, 381, 52 N.E.2d 1008.) The defendant is correct in asserting that there is no rule that only a defendant can ever lay the required foundation for an affirmative defense. However, in this case the defendant was the only person able to lay the foundation because, in view of Kemper's inability to testify, defendant himself was the only possible defense witness at the scene of the robbery. Brown and Galaviz could not testify that Kemper was coercing the defendant at the actual time of the robbery because they were not there. The ruling objected to was not erroneous.

The judgment of conviction is reversed and the cause is remanded for a new trial.

Reversed and remanded for a new trial.

GOLDBERG, P. J., and O'CONNOR, J., concur.