THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALLEN SUGGS, Defendant-Appellant.

First District (1st Division)   No. 62442

Opinion filed July 11, 1977.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Allen Suggs (defendant) was convicted of voluntary manslaughter and armed robbery. He was sentenced to 6 years and 8 months to 20 years for manslaughter. No sentence was imposed for armed robbery. Defendant has appealed.

In this court, defendant contends he was denied a fair trial because of questions and comments by the prosecutor concerning defendant's post-arrest silence, improper closing argument and derogatory language directed by the assistant State's Attorney at defense counsel. He further asserts that he was denied effective assistance of counsel; he was not proved guilty beyond a reasonable doubt and the manslaughter and armed robbery were one criminal act so that the latter conviction must be reversed. The State responds that the silence issue was waived or was harmless error and comments during closing argument were proper, not objected to and not prejudicial. The People further urge, the alleged instances of ineffective assistance of counsel were not prejudicial to defendant and he was proved guilty beyond a reasonable doubt.

A full recitation of the evidence is unnecessary because we have concluded that defendant's conviction must be reversed. (*People v. Monaghan* (1976), 40 Ill. App. 3d 322, 323, 352 N.E.2d 295, and cases there cited.) Briefly summarized, the State's case rested on the testimony of Juanita Turner that defendant and another man, Daniels, came to the front door of her apartment between 2 and 3 a.m. on February 8, 1973. Sam Cokely, Jr., who had been living with the witness and had fathered one of her children, answered the door. The witness testified that, after an argument, defendant took a gun from the waistband of Cokely's pants and handed it to Daniels. Cokely had his hands at his sides. Defendant then fatally shot Cokely. Defendant fled with Daniels. The witness

testified that a revolver "looked[ed] liked the same one" as had been fired by defendant. The gun was admitted into evidence.

One of the investigating police officers testified that he observed bloodstains "in front of the door" at Turner's apartment and nowhere else. A bullet was also recovered in the hallway near the front of the door. It was stipulated that the condition of the bullet made it unsuitable for comparison with test rounds fired from the pistol introduced by the State.

Defendant testified that he and Daniels went to Turner's apartment and Cokely answered the door. After a brief conversation, he pointed a gun at defendant with his right hand. Defendant grabbed Cokely's gun hand and both men struggled over the gun in the hallway outside Turner's apartment. After drawing his own gun from his coat pocket, defendant shot Cokely in self-defense. On cross-examination, defendant said that he did not know where he and Cokely were standing when the shot was fired, but that Cokely had fallen in front of an adjacent apartment 12 to 15 feet away from Turner's front door.

After the shooting, defendant and Daniels went to a friend's house where defendant gave his gun to the friend. Defendant went to his mother's house where he was arrested in the early morning following the shooting.

In several instances during trial, the State called attention to defendant's post-arrest custodial silence. During cross-examination, the prosecutor asked defendant whether he had told the police what happened after they had come to his mother's house and whether he had told the police at the police station what had happened. Defendant answered negatively to each question. The assistant State's Attorney also elicited defendant's testimony that the first person he had told about his self-defense story was his lawyer, more than two days after the shooting. During re-cross-examination, the prosecutor continued:

"Q: Did the police talk to you about this occurrence?

A: [Defendant] Yes.

\* \* \*

Q: Did you tell the police about being at Bobby's house?

A: No. They didn't ask."

At this point, defense counsel objected that the question invaded defendant's rights in force during custodial question. The objection was overruled. The prosecutor then asked:

"Q. Did the police question you in respect to this murder?

A: [Defendant] All I can remember of them asking me is them letting me know what I was charged with \* \* \*.

Q: Did you ever tell them you shot Sam in self-defense?"

An objection to the question was sustained as having been asked and answered.

During the State's closing argument, the assistant State's Attorney remarked: "[T]he defendant on the stand said the first time he told a story of self-defense was several days after he was arrested * * *." Further, during rebuttal argument, the comment was made: "The State had no way of knowing what he was going to testify to because he hasn't told anybody. He hadn't told the police." The prosecutor again commented on defendant's post-arrest silence in a similar manner without objection by defense counsel. Defendant's motion for new trial did not specify the State's use of defendant's silence as error.

■■ Under *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the State's use for impeachment purposes of the defendant's post-arrest failure to tell an exculpatory story to the police violated the due process clause. In *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295, this court held that elicitation of defendant's testimony on cross-examination that he had not told police of his compulsion defense and subsequent comment on this fact during closing argument was plain error and reversible under *Doyle.* (40 Ill. App. 3d 322, 326.) In the instant case, the prosecutor's repeated emphasis during cross-examination and closing arguments on defendant's failure to tell his self-defense story to the police was plain error.

■■ In this court, during oral argument, the State urged that defendant's trial occurred prior to *Doyle* and the principle announced there is thus inapplicable. This argument was not raised in the State's brief and was therefore waived. (Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7).) Even if the question were not waived, we note the Illinois reviewing courts have considered *Doyle* applicable to trials begun before that decision was issued without discussion of the retroactivity question. *People v. McClure* (1976), 42 Ill. App. 3d 952, 356 N.E.2d 899; *People v. Craigwell* (1976), 40 Ill. App. 3d 889, 353 N.E.2d 101; *Monaghan.*

Further, as we stated in *Monaghan,* quite aside from *Doyle,* the actions of the prosecutor were error under prior Illinois law. 40 Ill. App. 3d 322, 326, and cases there cited. See also *People v. McVet* (1972), 7 Ill. App. 3d 381, 387, 287 N.E.2d 479, *leave to appeal denied* (1973), 53 Ill. 2d 604; Ill. Const. 1970, art. I, §10; Ill. Rev. Stat. 1971, ch. 38, par. 103—2(a).

■■ The State contends that the error, if any, was harmless. We cannot agree. The credibility of defendant's self-defense testimony was a crucial factor in the jury's assessment of his guilt or innocence. Viewed as a whole, the evidence presented a direct conflict between one alleged eyewitness and defendant and was far from overwhelming on the issue of guilt. Juanita Turner testified that she saw defendant disarm Cokely and then shoot him while defendant testified that he drew his own gun and shot Cokely in the midst of a struggle over the gun Cokely had initially

pointed at defendant. The physical evidence is inconclusive. The location of the bloodstains in front of Turner's apartment may arguably reflect upon defendant's ability to recall exactly where the shooting occurred but does not directly affect defendant's recollection that he shot in self-defense. On close examination of the entire record, we are unable to conclude that defendant's conviction was not a product of the repeated and accentuated evidence of his failure to tell his exculpatory story to the police.

As the Supreme Court observed in *United States v. Hale* (1976), 422 U.S. 171, 180, 45 L. Ed. 2d 99, 107, 95 S. Ct. 2133: "Not only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility, but it also has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted."

■■■ While the improper emphasis on defendant's silence after arrest is itself sufficient to warrant reversal, two areas of prosecutorial misconduct also contribute to our conclusion that defendant was denied a fair trial. The record shows that the prosecutor made repeated verbal attacks on defense counsel in the presence of the jury. He admonished her to act like a lawyer; he objected to "the lie perpetrated by counsel"; he accused her of unprofessional conduct. During the defendant's final argument, the assistant State's Attorney interjected a rebuttal argument and, after being cautioned by the court against further interruption, remarked, "This is dirty tricks." He then again accused the defense attorney of trying to perpetrate an injustice on the jury by only reading a portion of a stipulation. In our view, these and other insults and unduly personal comments far exceeded permissible courtroom decorum. In effect the conduct tended to arouse the antagonism of the jury and to create a trial of the lawyers rather than a determination of the issue of guilt. The issue of guilt or innocence turned on two directly conflicting versions of the shooting. The State's evidence was far from overwhelming. Under such circumstances, the prosecutor's interjection of false issues and inflammatory statements was prejudicial error. (*Cf. People v. Monroe* (1977), 66 Ill. 2d 317, 323-24, 362 N.E.2d 295.) As the court observed in *Monroe*, "The accusations of fraud on the part of defense counsel could serve only to arouse the antagonism of the jury. (*People v. Stock,* 56 Ill. 2d 461)." (*Monroe,* 66 Ill. 2d 317, 324.) The frequency of this conduct vitiated any possible curative effect urged by the State as resulting from the court's instructions that comments by counsel were not to be considered as evidence.

Defendant's right to a fair trial was also violated by the prosecutor's actions in making the jury aware that the defense had access to prior

statements by Juanita Turner and had failed to impeach her testimony from these materials. During cross-examination of Turner, defense counsel asked the witness about what she had told the police. The prosecutor stated, "Your Honor, she [defense counsel] has the police reports. * * * She knows what was said." On redirect examination, the assistant State's Attorney elicited Turner's testimony that she had spoken to the police at the police station, had testified at the preliminary hearing and before the grand jury and at all times had stated that defendant had shot Cokely. An objection was overruled. During closing argument, the prosecutor commented that defense counsel had the police reports, preliminary hearing transcript and grand jury transcript and yet Turner had not been impeached by any prior inconsistent statements.

■■ ■ By these actions, the prosecutor usurped the sole discretion vested in defense counsel to determine the impeachment value of the materials in question. (See *People v. Beard* (1966), 67 Ill. App. 2d 83, 89, 214 N.E.2d 577, and cases there cited.) It was error for the State to call attention to defense counsel's possession of potentially impeaching witness statements and then to comment that the lack of impeachment from those documents proved that the statements were corroborative of the witness' testimony. (*People v. Lowe* (1967), 84 Ill. App. 2d 435, 228 N.E.2d 563; *People v. Robinson* (1973), 14 Ill. App. 3d 135, 302 N.E.2d 228.) Although this argument was not raised in defendant's motion for new trial, the importance of Turner's credibility to the State's case impels the conclusion that the repeated improper bolstering of her testimony affected substantial rights in a trial involving balanced testimony and was therefore plain error. Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).

■■ The State urges that the prosecutor's actions were justified as a means of rebutting a defense charge of recent fabrication of Turner's story. We cannot agree. Evidence of a prior consistent statement is admissible to rebut a charge of recent fabrication. (See, *e.g., People v. Rivera* (1975), 32 Ill. App. 3d 500, 503, 336 N.E.2d 255.) However, the State's reliance on this principle alone is misplaced. In part, the defense theory was that the witness was motivated to testify falsely because of her close relationship to the victim. He had fathered her child and was living with her when he was shot. Under *People v. Clark* (1972), 52 Ill. 2d 374, 389-90, 288 N.E.2d 363, the prosecutor's comments were not proper rebuttal because the alleged prior consistent statements were made after the shooting and thus occurred after the alleged motive to falsify arose. Statements made by Turner to the police, before the grand jury and at the preliminary hearing, were thus tainted by this motive and were not proper to rebut any charge of subsequent fabrication. This error and the other errors discussed above cumulated to deny defendant a fair trial.

The evidence to be adduced upon retrial is not before us; accordingly

we express no opinion on the propriety of convictions for both armed robbery and voluntary manslaughter. See *People v. King*, (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

We need not consider defendant's additional claims of error. None of these matters are likely to recur upon retrial.

The convictions and judgment appealed from are reversed and the cause is remanded to the circuit court for a new trial.

Reversed and remanded.

O'CONNOR, and BUA, JJ., concur.