THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENNETH BERINGER, Defendant-Appellant.

First District (1st Division) No. 83—1169

Opinion filed May 26, 1987.

James A. Stamos & Associates, Chartered, of Chicago (Patrick S. Hart, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Peter D. Fischer, and Craig Antas, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Kenneth Beringer was found guilty of murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)), and conspiracy (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a)). The court sentenced defendant to 30 years in the Illinois Department of Corrections. On appeal defendant raises a multitude of errors. Among the errors raised, defendant claims the trial court should have granted defendant's motion to quash his arrest and suppress certain statements. In addition, defendant claims that he was denied a fair trial because of gross prosecutorial misconduct.

This case is a companion case to *People v. Barkauskas* (1986), 147 Ill. App. 3d 360, 497 N.E.2d 1183, and *People v. Beringer* (1987), 151 Ill. App. 3d 558, 503 N.E.2d 778. In *Barkauskas*, we affirmed the conviction of the victim's husband for murder, armed violence, solicitation, and conspiracy. We also affirmed his sentence of natural life in prison without parole. In *Beringer*, we reversed the conviction of Kenneth Beringer's codefendant brother because of gross prosecutorial misconduct. We remanded that case for a new trial.

The record reveals that Edward Barkauskas, the victim's husband, approached James Galason at a hot dog stand and asked if he was crazy enough to kill his wife, Joanne. Subsequently, Galason and the Beringer brothers were walking down the street together when Kenneth Beringer pulled out a picture of Joanne Barkauskas and

showed it to Galason. Kenneth Beringer then remarked to Galason, "We'll see who gets her first." Defendant had been approached earlier by Barkauskas and asked to kill his wife in return for some insurance money. After Barkauskas asked defendant to kill his wife, he gave him the photograph of Joanne Barkauskas, which Beringer kept.

Subsequently, Galason and his friend, Mark Brown, stole the shotgun that was used as the murder weapon. Galason gave the shotgun to defendant to repay some money that he owed him. Defendant sawed off the barrel of the gun. He later gave the gun to Joseph Beringer to pay off a debt. However, the gun was kept under defendant's bed.

For the next two weeks leading up to the day of the murder, Barkauskas visited Galason, Joseph Beringer, and defendant many times at their apartment to discuss details of the murder. On one occasion, Barkauskas expressed impatience with the men for not killing his wife earlier. He said to Galason and defendant that he wanted his wife dead because she was going to file for a divorce. Barkauskas stated that he wanted his wife shot below the neck because he planned on having an open casket at her wake.

On July 15, 1981, the night before the murder, the Beringer brothers left a party to steal a car. They drove around looking for the kind of car they wanted when they observed a dark red Camaro. They "hot wired" the car and drove it to a location near their apartment.

The next morning, on July 16, 1981, the three men were awakened by Edward Barkauskas at approximately 7:30 or 7:45 a.m. Barkauskas drove Galason and Joseph Beringer to the stolen red Camaro; the defendant declined to accompany them. Galason and Joseph Beringer drove the Camaro to an alley where they waited for Joanne Barkauskas. As she walked in front of the alley, she was shot and killed.

Almost immediately following the shooting, Officer Martin Lee, a Chicago police officer, observed Galason and Joseph Beringer. As he pointed his gun at Joseph Beringer, Galason fled. Officer Lee pursued Galason, and Joseph Beringer fled as well. Lee arrested Galason in his apartment. Lee also arrested Kenneth Beringer and his girlfriend, Kathy Klaus, at this time.

At the police station, both James Galason and defendant gave statements implicating themselves in the murder of Joanne Barkauskas. Prior to trial, defendant moved to have his statement suppressed because he contended that he was physically and men-

tally coerced by the police and an assistant State's Attorney into giving the statement. The court denied defendant's motion to suppress his statement, finding that it was given voluntarily.

## I

■■ Defendant initially argues that the trial court erred in denying his motion to quash his arrest. He contends that Officer Lee arrested him without probable cause, on a mere suspicion that he was involved in the murder.

Probable cause to arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, 230.) The decision as to whether probable cause exists in a particular case depends on probabilities, not overly technical rules. In determining these probabilities, courts look to the factual and practical considerations of everyday life on which reasonable men act. (*People v. Clay* (1973), 55 Ill. 2d 501, 504-05, 304 N.E.2d 280, 282.) A probable cause determination is ordinarily left to the trial judge and will not be reversed on appeal unless manifestly erroneous. *People v. Williams* (1977), 53 Ill. App. 3d 266, 272, 368 N.E.2d 679, 683.

Officer Lee's testimony presented at trial supports a determination that he had probable cause to arrest defendant. Lee testified that he received a report from his police radio that he should look for two white males driving a red Camaro. The message described one man as being tall and thin with long blonde hair. The other man was described as being shorter with brown hair. He testified that he received a second message, which stated that a man had called in a report of two men exiting a red Camaro at 49th and Rockwell with what appeared to be a rifle or a shotgun. Based on these radio calls, Officer Lee immediately proceeded to 49th and Rockwell, where he saw two men walking down the street from a Camaro.

The officer testified that he pulled out his revolver and told the two men to halt. The long-haired man began to run eastbound. While he pursued the long-haired man, the other man, who was shorter with brown hair, began to run in an easterly direction. Officer Lee testified that he only saw the brown-haired man momentarily.

After losing sight of the brown-haired man, the officer testified that he chased the taller man with long hair to the back door of the building at 2438 West 48th. Lee testified that after this man entered

the building, he radioed for help before entering the premises.

■ When the additional officers arrived on the scene, Lee then entered the building. He arrested the long-haired man he had been chasing in a second-floor apartment. He also arrested another man whom he believed to be the shorter brown-haired man.

This testimony shows that at the time Officer Lee arrested the long-haired man, James Galason, he had reasonable grounds to believe that defendant was the other man that had run off while he chased Galason. This belief was reasonable in light of several facts. First, Lee testified that as he chased the one man in an easterly direction, the other man was also running east and then south when he lost sight of him. As Lee waited for more police at the back entrance, the other man could have easily entered through the front door.

Second, defendant has the same color hair as his brother. Lee testified that the defendant looked similar to defendant's brother Joseph. In addition, defendant fit the physical description that was provided over the police radio. Therefore, Officer Lee acted reasonably when he arrested defendant, believing him to be his brother Joseph. The trial court acted properly in denying defendant's motion to quash his arrest.

## II

■ Defendant next argues that the trial court improperly denied his motion to suppress statements made to the police. Defendant claims that the State violated the material witness rule when it failed to call two police officers who allegedly were present when the statements were made. Generally, when the voluntary nature of a confession is brought into question by a motion to suppress, the State must produce all material witnesses connected with the taking of the statements or explain their absence. (*People v. Lumpp* (1983), 113 Ill. App. 3d 694, 696, 447 N.E.2d 963, 966.) The supreme court explained that material witnesses "are those persons whose testimony would be material on the issue of the voluntary nature of the confession." *People v. Armstrong* (1972), 51 Ill. 2d 471, 476, 282 N.E.2d 712, 715.

■ In the instant case, the State explained to the trial court that the two officers in question were not material witnesses because they did not play a role in procuring defendant's confession and were not present at the time the statements were given. The State further explained that they had mistakenly included the officers' names on its discovery list of people present when defendant

made his statements. There is no evidence to cast a doubt on the veracity of this explanation. Thus, the officers were not material witnesses as defined by *Armstrong*, and, accordingly, the court properly denied defendant's motion to suppress his statements.

## III

■ Next, the defendant argues that gross misconduct by the prosecutors denied him a fair trial. He contends that the prosecutors destroyed the credibility of the only eyewitness with unsubstantiated cross-examination and attacked the integrity of defense counsel. In our reversal of Joseph Beringer's conviction, we found this conduct to be prejudicial and objectionable. (*People v. Beringer* (1987), 151 Ill. App. 3d 558, 561-62, 503 N.E.2d 778, 780.) We find this conduct to be equally prejudicial and objectionable in this case.

As we discussed in the first *Beringer* case, the prosecutors destroyed the credibility of Harvey Webb, the only eyewitness to the shooting, with unsubstantiated cross-examination. (*People v. Beringer* (1987), 151 Ill. App. 3d 558, 560-61, 503 N.E.2d 778, 779-80.) The State argues that this conduct amounts to harmless error because defendant did not suffer any prejudice. We disagree. Galason's testimony was a material factor in defendant's conviction. Once Harvey Webb's credibility was destroyed, Galason's testimony went to the jury uncontroverted. If Webb's testimony had not been discredited, the jury may have discounted Galason's story inculpating defendant. The State's conduct was definitely prejudicial and rises to the level of reversible error. *People v. Redman* (1985), 135 Ill. App. 3d 534, 542, 481 N.E.2d 1272, 1278.

■ The record is replete with accusations and innuendo implying that defense counsel resorted to lying, trickery, and deception to obtain an acquittal for defendant. Such conduct has been consistently condemned. (See *People v. Starks* (1983), 116 Ill. App. 3d 384, 394, 451 N.E.2d 1298, 1305 (cases cited therein).) Accusations of deception and trickery by defense counsel served no purpose except to prejudice the jury. *People v. Suggs* (1977), 50 Ill. App. 3d 778, 783, 365 N.E.2d 1118, 1121.

■ Although not raised by defendant, our review of the record indicates that the prosecutors also aroused the passions of the jury during closing argument. The record shows that the State presented the following argument to the jury:

> "What about Joanne Barkauskas' rights. I want to mention her rights and talk to you about that because she can't be here today to speak up for herself. What about her right to

grow, to have a family. Her rights are never considered in this case, not one word has been mentioned about Joanne Barkauskas' rights."

These remarks are strikingly similar to those found to be prejudicial in *People v. Littlejohn* (1986), 144 Ill. App. 3d 813, 827, 494 N.E.2d 677, 686-87, and *People v. Starks* (1983), 116 Ill. App. 3d 384, 390, 451 N.E.2d 1298, 1302-03. Both *Starks* and *Littlejohn* held that actual prejudice accrued to defendant as a result of such argument. We find in this case that the commentary about Joanne Barkauskas' rights was designed to arouse the sympathy and passions of the jurors and thus was improper.

To summarize, we find that the State's conduct in this case was so egregious as to deny defendant a fair trial. The State used unsupported cross-examination to destroy a key defense witness. In addition, it impugned the integrity of defense counsel with accusations and innuendo. Moreover, during closing argument it aroused the jury's passions with vengeful commentary.

A heinous crime was committed in this case. Certainly the responsible parties should be punished, but only after a fair trial. The State's brazen misconduct insured that the defendant would not receive a fair trial. Accordingly, the judgment of the circuit court is reversed and the cause is remanded for a new trial. We expect that the errors discussed herein will not be repeated on retrial.

Our disposition makes it unnecessary for us to consider the remaining issues raised by defendant on appeal. We note, however, that we believe the evidence at trial was sufficient for the trier of fact to conclude that defendant was guilty beyond a reasonable doubt. This does not mean we are making a finding as to defendant's guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting defendant to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375.

Reversed and remanded.

QUINLAN, P.J., and O'CONNOR, J., concur.