THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD GREEN, Defendant-Appellant.

Third District   No. 76-190

Opinion filed October 24, 1977.

Robert Agostinelli and Mark W. Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Robert P. Livas, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Richard Green, appeals from his conviction of burglary following a jury trial in Will County.

Green raises two issues for review: (1) Whether his rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated where the prosecutor cross-examined him regarding his post-arrest silence and commented during summation on that silence. (2) Whether the prosecutor overstepped the bounds of proper argument, thereby prejudicing defendant, where he repeatedly misstated the evidence during summation.

Defendant Green and one Jessie Couch were jointly indicted for burglary on August 8, 1974. The evidence established that Mrs. Elizabeth Spights of 317 Sherman Avenue in Joliet, Illinois, observed, from her second floor window, two men pry open and enter a window in a neighboring house. This incident occurred at about 10 p.m. on July 6, 1974. The home that was broken into and entered was vacant at that time as it was part of the deceased owner's estate. While the two men were in the process of prying open the window, Mrs. Spights phoned the police. Mrs. Spights said the police arrived on the scene within 10-15 seconds after they were called. By this time the two men had entered the home and closed the window. The police spoke momentarily with Mrs. Spights, then surrounded the house and gained entry by breaking in a small door. The defendant was discovered in the garage hiding under a boat and Couch was found in a closet of one of the bedrooms. A watch, a ring, and a screwdriver were found by Couch's feet and another watch and a pocket knife were found on the shelf above his head. The top dresser drawer in the bedroom where Couch was found was open and a jewelry box inside the drawer was open. No determinative finding of either defendants' fingerprints on any of the above objects was established. Both men were arrested and advised of their rights pursuant to the landmark

case of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, in due course.

The executor of the estate of the deceased owner of the vacant house testified that the house was part of an estate and no one other than himself had authority to enter the house on July 6, 1974. On July 4, 1974, he had examined the house and found it to be secure. He was unable, however, to testify as to the contents of the jewelry box because no inventory of the personal property in the home had ever been made.

Defendant presented exculpatory evidence tending to negate any inference that he broke into and entered the house with a felonious intent. Green testified that he and Couch broke into the house in order to find a place for Green's wife and young children to spend the night since they had earlier been locked out of the motel where they were staying for not paying the rent.

Mrs. Couch, wife of the defendant's accomplice, testified that from her vantage point in a parked car just down the street, she had observed the police arrive at the scene around one-half minute after Green and her husband went up to the house.

Without objection the defendant was cross-examined by the prosecutor concerning his exculpatory reason for entering the house and his failure to inform the police of this reason immediately after he was arrested. The prosecutor also commented upon defendant's post-arrest silence during closing arguments.

On rebuttal the State produced the manager of the motel who stated that the defendant had not been locked out for nonpayment of rent and presented the motel records as substantiation.

Resolution of the first issue raised is determinative of this appeal. We agree with defendant that reversible error occurred when the prosecutor cross-examined Green concerning his post-arrest silence and commented on that fact to the jury in his closing argument. Immediately upon being apprehended Green responded to police questions concerning whether anyone else was in the house, whether he was armed and how he had traveled to the house. Thereafter he was given his Miranda warnings, and then he refused to respond to police questions. Excerpts of the defendant's testimony on cross-examination, redirect and recross are the best method of illustrating the alleged error.

Cross-examination of Richard Green by assistant State's Attorney:

"Q. Mr. Green, when the police took you to the car, to the squad car, did you tell them from the time you left the house until the time you went to the squad car why you went into the house?

A. When I got down to the station they told me—

Q. That's not the question I ask you, Sir—Did you tell the police?

A. Why I went into the house?

Q. Yes, Sir.

A. Tell like why I was there?

Q. Yes.

A. No Sir.

Q. Did you say anything to them in the squad car at all?

A. Just when he was reading me, reading my rights.

Q. You didn't talk to them when you were in the squad car? Did you talk to the police officer?

A. When I was in the squad car the only thing I asked—they asked me if I understand my rights and I told him yes. That's all I said in the squad car. That's all he asked me and then he told me to shut up.

MR. LECHWAR: I have no further questions, your Honor.

THE COURT: Mr. Murer?

MR. MURER: Thank you, Judge.

[Redirect by Mr. Murer, defense attorney]

Q. Mr. Green, did the police ask you whether or not there was somebody else in the house?

A. Yeah, that's when they had me laying on the floor like down by the garage, and then they brought me outside and asked me that.

Q. All right, did they ask you anything else when you were laying between the garage and the car?

A. Like I was outside when they asked me, you know, who else was in the house, and I told them one, you know, I said another guy, and then they asked me did do [sic] you have a gun and I told them no, and then the other one told me to move up slow, you know, and got me up. And then they read me my thing, you know, like read me my rights.

* * *

Q. Did you talk to the police at the police station?

A. Yes, I did.

Q. Did you tell them why you had broken into the house?

A. I had at the police—Sgt. Hernandez?

Q. Yes.

A. I asked if I could talk to Sgt. Hernandez and they told me I was and I didn't see him down here, and I told them they never send him.

MR. MURER: I have no further questions.

* * *

[Recross By Mr. Lechwar, assistant State's Attorney]

Q. When you were at the police station, Mr. Green, and you asked to see Sgt. Hernandez, did you tell anyone then that you

had—this is the reasons—the reason why you went into the house, did you give anybody the reason why you went into the house?

A. No, that's why I asked to see Sgt. Hernandez.

Q. But you didn't tell anybody else, the police down there?

A. No, they didn't ask me.

Q. You didn't tell Sgt. Hernandez?

A. I never seen him, they never send him down to me."

The error was compounded when the assistant State's Attorney stated the following in his closing summation:

"And that brings up another interesting point, ladies and gentlemen. If they went in there as they said to find a place to live for someone, why didn't they say anything? Both of them answered some questions. Mr. Green was read his rights, and he answered the question that the police officers read him off the card and then he said we didn't have a car, we didn't have guns, and that the only other person with me was the guy in the house. He never said anything at all about why they went into the house. They don't try to defend themself [*sic*]. He rode to the station in their police car with the policeman there, they never said anything then."

■■ In the recent case of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the Supreme Court held that the use for impeachment purposes of a defendant's silence at the time of arrest and after he has received *Miranda* warnings violates the due process clause of the Fourteenth Amendment to the United States Constitution. The underlying rationale for such a rule of law is that a defendant's silence may not be indicative of his recent fabrication of his exculpatory explanation but merely his exercise of his *Miranda* rights. The factual situation in the present case is on all fours with *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. The court weighed the prosecution's argument that such an inquiry was necessary for impeachment of defendant's exculpatory story told for the first time at trial with the defendant's right to remain silent. The scale was overbalanced in favor of a defendant's exercise of his *Miranda* rights.

■■ In arguing against the applicability of the *Doyle* decision the State relies upon the defendant's failure to object to the testimony during the trial as a waiver of the issue. Although the defendant did not object to the prosecutor's cross-examination or argument, we believe those actions amount to plain error. (*People v. Deberry* (4th Dist. 1977), 46 Ill. App. 3d 719, 361 N.E.2d 632; *People v. Monaghan* (1st Dist. 1976), 40 Ill. App. 3d 322, 352 N.E.2d 295.) Moreover in the recent case of *People v. Williams* (3d Dist. 1977), 45 Ill. App. 3d 769, 360 N.E.2d 151, we concluded that a similar *Doyle* type error can never be harmless. Therefore because of the constitutional magnitude of defendant's right to silence we believe this is

an appropriate case to invoke the plain error doctrine. See *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133.

■■  The State further argues that the decision in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, was not yet rendered during the trial of the instant case and that we should avoid a retroactive application of that Supreme Court ruling by affirming Green's conviction. While this argument does appear to be based upon sound reasoning we need not expressly pass upon the retroactivity of the *Doyle* case because the law in Illinois has for some time recognized the error alleged here. In the recent case of *People v. Suggs* (1st Dist. 1977), 50 Ill. App. 3d 778, 365 N.E.2d 1118, the court addressed the identical issue presented here and held *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, was controlling. Although the court there did not expressly give the *Doyle* decision retroactive application, the defendant's right to silence in similar circumstances was upheld even though the case was tried before the decision in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. The court in *People v. Monaghan* (1st Dist. 1976), 40 Ill. App. 3d 322, 352 N.E.2d 295, relied upon the cases of *People v. Lewerenz* (1962), 24 Ill. 2d 295, 181 N.E.2d 99; *People v. Owens* (4th Dist. 1975), 32 Ill. App. 3d 893, 337 N.E.2d 60; *People v. Wright* (1st Dist. 1975), 32 Ill. App. 3d 736, 336 N.E.2d 18; and *People v. McLean* (1st Dist. 1971), 2 Ill. App. 3d 307, 276 N.E.2d 72, for the proposition that questions and comments on a defendant's post-arrest custodial silence at the time of trial were reversible error under Illinois law. *Suggs* cited *Monaghan* with approval. Such a result is also mandated by the 1970 Illinois Constitution (Ill. Const. 1970, art. I, §10) and section 103—2(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 103—2(a)).

■■  It is argued that defendant Green's silence at the time of his arrest is probative of his credibility at trial. To the contrary we believe his silence is more indicative of his valid exercise of his constitutionally protected right to remain silent. The cross-examination by the State, emphasizing Green's post-arrest custodial silence and the prosecutor's comments on that silence during summation had an extremely great potential for prejudice with the jury. The likelihood of the jury being confused and doubting defendant's credibility when confronted with defendant's insistence on his right to remain silent and his later exculpatory statement at trial is obvious. We believe, therefore, that this cause should be reversed and remanded for a new trial.

As a secondary issue defendant asserts that the court erred in allowing the prosecutor to misstate the evidence in his closing argument thus confusing the jury to defendant's prejudice. The misstatement of the evidence concerned discrepancies between testimony in fact, and the prosecutor's summation about the amount of time that the defendant and

Couch were in the house before the police arrived as reported by various witnesses, as well as the condition and the identity of the contents of the dresser and jewelry box as reported by the executor of the estate. This evidence is relevant and probative of defendant's felonious intent at the time of the breaking and entering and should not have been misstated. Given our decision to reverse and remand on other grounds we will not consider the State's argument that the alleged error was so slight as to be only harmless error.

For the reasons stated the judgment of the Circuit Court of Will County is reversed and the cause is remanded for a new trial consistent with the views expressed herein.

Reversed and remanded.

STENGEL, P. J., and ALLOY, J., concur.