THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GABRIEL GOMEZ, Defendant-Appellant.

Third District    No. 78-350

Opinion filed June 11, 1980.

John W. Robertson and Douglas G. Olson, both of Bozeman, Neighbour, Patton & Noe, of Moline, for appellant.

Edward Keefe, State's Attorney, of Rock Island (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Following a jury trial in the Circuit Court of Rock Island County, the defendant, Gabriel Gomez, was found guilty of the offense of burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1). Subsequently, he was sentenced to serve a term of 5 years in the penitentiary. On appeal from his conviction, the defendant presents two issues for our consideration: First, does the fact that a mistrial was declared in his previous burglary trial bar retrial for the same offense on double jeopardy grounds; second, do numerous errors in the defendant's second trial, either singly or taken together, mandate a reversal of his burglary conviction.

On February 20, 1978, the defendant and two companions, Guadalupe Mejia and Dolores Sollis, were arrested for burglarizing an appliance store in Moline, Illinois. Prior to trial, both Mejia and Sollis pleaded guilty. Gomez, however, decided to plead not guilty, and his trial was set for May 22, 1978.

Although the defendant obtained a high school diploma, and attended some college in Iowa and Illinois, the defendant's attorney advised the court before the trial began that "there's some question as to how much English the defendant Gomez speaks," and stated that Gomez would feel more comfortable if a translator were available to translate English into Spanish for the defendant when necessary. The court did not appoint an interpreter for the defendant, but allowed an interpreter to sit at the counsel table with the defendant and to assist him in understanding the proceedings.

During the State's case in chief, Pablo Reyna, a Moline police officer, was called to testify. Reyna had interrogated the defendant at the police station after his arrest. Reyna testified that after he was read his *Miranda* rights, the defendant stated he had nothing to say and did not wish to talk. No objection was made by the defendant to the State's questioning which elicited this testimony.

After both the State and the defendant had rested, the jury was excused. The trial court then voiced its concern about the prosecutor's repeated references to the defendant's exercise of his right to remain silent during the direct examination of Reyna. At this time defense counsel moved for a mistrial. Relying primarily upon this court's decision in *People v. Green* (1977), 53 Ill. App. 3d 820, 368 N.E.2d 1129, *rev'd* (1979), 74 Ill. 2d 444, 386 N.E.2d 272, the trial court granted the defendant's motion "due to the misconduct of the prosecutor." An order

granting the defendant's motion for a mistrial, and setting the defendant's second trial for June 12, was entered on May 25, 1978.

The evidence presented by the State at Gomez' second trial was virtually the same as that presented at his first trial. An eyewitness to the burglary testified on the State's behalf, as did several police officers to whom the defendant had allegedly admitted his guilt after his arrest. The defendant was the only witness to testify on his behalf. He testified that although he was with Mejia and Sollis the morning of the burglary, he did not participate in it and in fact endeavored to dissuade them from committing the crime. He also stated that although he could speak conversational English, he had occasional difficulty with the English language. Consequently, his alleged admissions of guilt made to the police following his arrest were not truly admissions, but rather mistranslations of what he was thinking in Spanish into English. As in the first trial, an interpreter, although not formally appointed, was available to aid the defendant during his trial. At the close of the defendant's case, the guilty pleas of Mejia and Sollis were admitted into evidence.

Over the defendant's objection, Officer Steven Brockway was allowed to testify for the State as a rebuttal witness. Brockway testified that over a two-year period he had eight to 10 contacts with the defendant, and on each occasion the defendant had been able to converse in English. Following this rebuttal testimony and closing arguments, the case was given to the jury, which returned a verdict of guilty.

■■ The defendant's first contention on appeal is that the doctrine of double jeopardy bars his reprosecution for the offense of burglary. When a defendant moves for a mistrial on the grounds of prosecutorial or judicial error, and that motion is granted, normally all barriers to reprosecution are removed unless the defendant's motion was necessitated by prosecutorial or judicial overreaching. (*United States v. Dinitz* (1976), 424 U.S. 600, 47 L. Ed. 2d 267, 96 S. Ct. 1075; *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547; *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 387 N.E.2d 325. See *United States v. Scott* (1978), 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187.) Although the defendant argues that the prosecutorial misconduct in the instant case, in the form of the prosecutor's repeated references to the defendant's post-arrest silence, constitutes that prosecutorial overreaching necessary to sustain a double-jeopardy claim, we disagree. There is no indication in the case at bar that the prosecution engaged in this conduct with the intent to force the defendant to move for a mistrial. The double-jeopardy clause protects defendants "against governmental actions *intended to provoke mistrial requests* and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where

'bad-faith conduct by judge or prosecutor' [citation] threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution of a more favorable opportunity to convict' the defendant." (Emphasis added.) (*Dinitz*, 424 U.S. 600, 611, 47 L. Ed. 2d 267, 276, 96 S. Ct. 1075, 1081.) In accord is *People v. Handley* (1972), 51 Ill. 2d 229, 282 N.E.2d 131, in which the Illinois Supreme Court states that the type of prosecutorial overreaching or impropriety which will bar reprosecution following a mistrial necessitated by that conduct is that "designed to avoid an acquittal." 51 Ill. 2d 229, 235, 282 N.E.2d 131, 135-36.

■■ In the case at bar, the defendant alleges that the assistant State's attorney intentionally engaged in prosecutorial misconduct during his first trial in an effort to obtain a conviction. Although this may be true, the defendant cannot avail himself of double-jeopardy protection by such an argument. To obtain the protection of the double-jeopardy clause in a case such as this, the intent of the prosecutor in overreaching must be to obtain a premature termination of the proceedings by forcing the defendant to move for a mistrial. Unless the prosecutor's misconduct was a ploy to force the defendant to move for a mistrial, and thereby obtain an opportunity to prosecute the defendant a second time, overreaching to obtain a conviction, although not to be condoned, does not itself foreclose reprosecution. The record is devoid of any evidence that the assistant State's attorney's misconduct was committed in bad faith, and with the intent to avoid an acquittal. (*Handley*.) In the absence of such evidence, the fact that the mistrial was granted upon the defendant's motion removes all barriers to reprosecution (*Dinitz*; *Jorn*), and as a consequence no valid double-jeopardy claim is made by the defendant Gomez.

The second contention of the defendant is that even if his reprosecution for burglary was not barred by double jeopardy, reversible error was nevertheless committed at his second trial which mandates a reversal of his conviction. The defendant's first allegation of error relates to the assistant State's attorney's closing argument. The defendant contends that during his closing argument, the prosecutor made a number of comments regarding the defendant's use of an interpreter violative of his sixth amendment right to a fair trial. (U.S. Const., amend. VI.) The pertinent portion of the State's closing argument is as follows:

"Now in the opening remarks that were made by the State you were asked to observe the demeanor of the witness. You are also the judge of their credibility. In most law suits rather [*sic*] criminal or civil there's going to be a conflict as to what the facts are. But, you had the opportunity to observe the witnesses. I only point out that I believe Mr. Gomez has the most to lose in this case. Also, Mr. Gomez required an interpreter. You heard testimony from the

State, Officer Brockway, again came in and said I had ten previous contacts with Gabriel Gomez and always they were able to get along. They always seemed to be able to converse. Gabriel Gomez, if you watched him on my questioning, on Mr. Chickris's questioning, seemed to understand what we were saying, and he was, that on several times he volunteered answers before they were interpreted. And, I submit to you that Gabriel Gomez understands English and speaks English a lot more than he's leading us to believe. And, he comes into Court in front of us, in front of the Jury, in front of the Judge, in front of all the parties, and he tries to lead us down the path again. He wants to explain away those admissions. So, I'm going to let everybody believe I don't understand English. But, yet when I asked him questions he could give me answers before they were interpreted or translated into Spanish. When the interpreter would give the answer back he would then volunteer additional portions to the answer. He did that. So, I submit to you that maybe Gabriel Gomez is trying to lead us down the path once again right here in Court in front of all of us. You had the opportunity to look him. You make that decision."

■■ The defendant cites a number of cases in which it was held that a criminal defendant who has difficulty understanding English is entitled to an interpreter. (See, *e.g., United States v. Carrion* (1st Cir. 1973), 488 F.2d 12; *United States ex rel. Negron v. New York* (2d Cir. 1970), 434 F.2d 386). Using these authorities as a foundation, and drawing an analogy from *People v. Green* (1977), 53 Ill. App. 3d 820, 368 N.E.2d 1129, *rev'd* (1979), 74 Ill. 2d 444, 386 N.E.2d 272, the defendant takes the position that the prosecutor's comments have a "chilling effect" upon the defendant's exercise of his right to an interpreter, and should have been prohibited. However, we are of the opinion that the defendant's reliance upon *Green,* which is integral to his argument, is misplaced. In *Green,* the prosecution tried to draw an inculpatory inference from the defendant's post-arrest silence. Both this court and the Illinois Supreme Court found that comment upon the defendant's post-arrest silence was erroneous, as "silence in the wake of [*Miranda*] warnings may be nothing more than the arrestee's exercise of [his] *Miranda* rights." (74 Ill. 2d 444, 449, 386 N.E.2d 272, 274, quoting *Doyle v. Ohio* (1976), 426 U.S. 610, 617-18, 49 L. Ed. 2d 91, 97-98, 96 S. Ct. 2240, 2244-45.) In the case at bar, however, the prosecutor commented upon the defendant's use of an interpreter for the sole purpose of attacking his credibility. The thrust of Gomez' defense was that the alleged admissions made after his arrest were to be given little weight due to his difficulty in speaking and understanding English. However, as the assistant State's attorney points out in his closing

argument, there was testimony that the defendant was able to converse in English without a great deal of difficulty. The assistant State's attorney's point in closing argument was that on the basis of the evidence presented, and Gomez' conduct on the witness stand, it is obvious that the defendant spoke English without difficulty, and consequently his contention that he could not should be rejected. The reference to the defendant's utilization of an interpreter was an essential part of the prosecution's attack upon Gomez' credibility. If the defendant is not to be believed, and he speaks better English than he claims he does, his use of an interpreter was unnecessary. The prosecutor's implication that the use of an interpreter was unnecessary was nothing more than part of his attack upon the defendant's credibility, a subject which may be commented upon in closing argument. *People v. Franklin* (1978), 64 Ill. App. 3d 400, 380 N.E.2d 1082.

Further, the prosecutor's comments were not objected to by the defendant during the State's closing argument, nor were the comments raised as error in the defendant's post-trial motion. Normally, this would result in a waiver of the issue on appeal. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) Waiver can only be avoided when the error is considered to be plain error under Supreme Court Rule 615(a). (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a).) Even if the prosecutor's comments constituted plain error, it was clearly harmless. (*People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272.) Given the evidence presented and the conduct of the defendant during trial, the jury could have easily concluded, without the prosecutor's comments, that the defendant indeed spoke and/or understood English better than he contended, and consequently the interpreter may not have been required.

■■ The second error that the defendant contends mandates reversal concerns the comments of the trial court following the revelation to the jury that both of Gomez' co-defendants pleaded guilty to burglary. After stating that "[w]hile it's not determinate [*sic*] of this defendant's guilt or innocence, the co-defendants both plead guilty in this case," the trial court commented, "For what it's worth, those are the facts." The defendant takes the position that these comments reflect a "negative attitude" on the part of the trial court, and erroneously indicated to the jury that little weight should be given to this evidence. We find no merit in this argument. From our reading of the record, we do not believe that the trial court's statements amounted to a negative comment on the value of the evidence of the co-defendants' guilty pleas. Mejia and Sollis' guilty pleas were in fact not determinative of the defendant's guilt or innocence, and the subsequent "for what it's worth, those are the facts" comment possesses, in our view, neither positive nor negative overtones. There is no error here.

The defendant's final allegation of error concerns the State's rebuttal evidence in the form of testimony by Officer Brockway that on a number of occasions he spoke with the defendant in English, and the defendant did not have any difficulty in conversing with him. The defendant takes the position that this rebuttal testimony should not have been allowed. We believe, however, that the allowance of Brockway's testimony was proper. Brockway's testimony was offered to disprove the defendant's claim that he had difficulty in speaking English. Rebuttal evidence "which would tend to 'explain, repel, contradict or disprove the evidence of the defendant,' " is allowable. (*People v. Waller* (1977), 67 Ill. 2d 381, 387, 367 N.E.2d 1283, 1286.) Additionally, there is nothing unduly prejudicial in Brockway's testimony. Although he was a police officer, his statement that he had "contacts" with the defendant over a period of time does not necessarily imply that those contacts arose out of some criminal activity on Gomez' part.

For the reasons we have stated, we affirm the judge of the Circuit Court of Rock Island County.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.