THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERBERT CRAIGWELL, Defendant-Appellant.

First District (5th Division)   No. 62135

Opinion filed July 23, 1976.—Modified upon denial of rehearing September 3, 1976.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of voluntary manslaughter and was sentenced to a term of 3 to 20 years' imprisonment. On appeal, he contends the trial court erred when it (1) granted the State an extension of time within which to bring him to trial; (2) allowed the State to use defendant's silence at the time of his arrest for impeachment purposes; and (3) adjudged him guilty beyond a reasonable doubt.

Defendant was indicted for the murder of Curly King which occurred on October 31, 1972, in a vacant lot at the corner of 63rd and Michigan. On February 27, 1974, the State moved to extend defendant's trial date for an additional 60 days. In support of its motion an Assistant State's Attorney and a State investigator testified about their efforts to locate the chief prosecution witness, Terry King Johnson, the decedent's wife at the time of his death. The trial court did not rule upon the motion, but released defendant from custody on bond which automatically extended his term.

On April 5, 1974, defendant demanded a trial and the State moved to extend. Cook County sheriff's investigator James Rossi testified about his attempts to locate Terry King Johnson. He had checked with the Public

Aid Department and found that checks for Terry King were being sent to 6518 South Vernon. At that address, Marshall Lindsey stated that Terry King Johnson no longer resided there, but said she now lived in Greenfield,[1] Mississippi. Terry King Johnson's sister, Rose Ann, gave him an address in Bartlett, Illinois, but the witness was not residing there either. Her children were not registered in the Chicago public school system. On February 20, 1974, he checked with a Captain Sweeney of Greenfield who stated that he would attempt to locate her. He checked with Sweeney again in mid-March, but the witness had not been located at that time. He admitted that he had not spoken to Sweeney for "probably a couple weeks or so."

After hearing arguments on the motion, the trial court found the State had exercised due diligence in its attempts to locate the witness and that reasonable grounds to believe that she would be obtained by a later date existed. The motion to extend was thereupon granted. The case went to trial on March 29, 1974, and the following pertinent evidence was adduced.

*For the State*

*Terry King Johnson*
Since her deceased husband Curly's death she has remarried and now lives in Greenfield, Mississippi. On October 31, 1972, she was separated from Curly and lived with her sister. She was seeing defendant as a friend, but was not dating him. Curly arrived at her sister's apartment between 9:15 and 9:30 a.m. She, Curly, and their three children went to their parked car in a vacant lot across the street from the apartment. While she was sitting in the car discussing reconciliation, Curly struck her. She exited from the vehicle and as she was running away, Curly caught her, pushed her onto the trunk, and hit her with his fist six or seven times. During this beating, defendant approached and a fight ensued between Curly and defendant. After five or six minutes the fight ceased and defendant pulled a pistol and shot Curly twice. She stood about six feet away from the men during the shooting. Curly did not have any objects in his hands. There was no space of time between the shots.

After Curly fell to the ground, she went to her sister's apartment to call the police. As she was returning to the vacant lot she saw defendant standing on the intersection's northeast corner. They walked back to the scene and when the police arrived defendant handed the gun to her. Although she told the police that she had shot her husband, she had done so while in a state of shock. After she and defendant were arrested and

[1] Variously referred to as Greenfield, Greenwood, and Greenville by the attorneys and witnesses throughout the hearing on the motion and the trial.

transported to the police station, she told the police that defendant had shot Curly.

On cross-examination she denied answering at a preliminary hearing that defendant told her "* * * he was ready to go to jail for me," but stated that she had said he was not ready to go to jail for her. She admitted owning a .32-caliber pistol prior to the incident. She did not recall previously stating either that she had taken the gun from defendant rather than having it handed to her, or that defendant had seen her boy friend. She admitted that it was the police who had told her that she had been in a state of shock when she first confessed to the murder.

### Melvin Sansard

He was working in his company's parking lot approximately three-quarters of a block from the scene. He saw three people standing in the vacant lot. Two men began to fight and continued for two or three minutes while a woman in a maxi-coat observed. After they had separated, he saw one man fall to the ground and heard a noise like a firecracker. As the fallen man attempted to rise, he heard another loud noise and the fallen man collapsed. The man who remained standing was wearing a blue denim jacket.

### Annie Stevens

She lived on the 14th floor of an apartment building directly across from the scene. She heard an argument through her bedroom window. As she looked out the window, "a man" pulled out a pistol and shot another man. When the man who had been shot and was on the ground said "don't shoot me anymore," the other man fired a second shot.

### Robert Hurst

He had been a Chicago police officer for five years. When he and his partner, Officer McWilliams, arrived at the scene, they were approximately two to three feet away from defendant and Terry King Johnson, defendant took the pistol from his left hand and placed it in Terry's right hand. Defendant was wearing a blue denim outfit and Terry's mouth was bruised and swollen. Although Terry originally said she had shot Curly because he beat her, she later retracted her statement at the police station and implicated defendant.

*For defendant*

### Harold Burkes

He had been defendant's friend for six years. Defendant had brought Terry King Johnson over to his home many times and had introduced her

as his girlfriend. He had also seen Terry at defendant's apartment. Defendant had never owned a gun.

*Defendant Herbert Craigwell on his own behalf*

On October 31, 1972, he was living with Terry King Johnson at 6055 South Champlain and was supporting her three children. At 7:30 a.m. Terry left his apartment in his car to pick up her three children at her sister's apartment. When she failed to return by 9:30 he took a cab to Terry's sister's apartment. He saw Terry and her children sitting with a man in a parked car across the street in a vacant lot. After he had walked to the car and had asked her what was happening, the man jumped out of the car and stated that he was Terry's husband, Curly. When he asked Terry for the keys to his car, Curly began to choke her. He attempted to break up the fight, but Curly hit him in the face and they began to fight. During the fight he heard two shots and Curly fell to the ground. Terry had turned and was running towards the apartment building. He was frightened and also ran. After they had returned to the scene and as the policemen approached she attempted to hand the pistol to him and said he should tell the police that he had shot Curly to save her life. He refused. He denied owning a gun and shooting Curly King.

On cross-examination, he admitted wearing a blue demin outfit, but added that Johnson was also wearing blue jeans with a nonmatching jacket. The following colloquy also occurred:

"Q. Did you tell any of those police officers that Terry King had shot her husband?

MR. SACKS: Objection, * * * I make a motion for a mistrial. The defendant's constitutional right to remain silent, to tell someone he did it or said nothing can't be used against him in this particular trial.

THE COURT: I would agree with you if he didn't take the stand. He's now taking the stand and relating certain facts indicating another person shot the victim. At this point I think he's subject to cross-examination.

MR. SACKS: Judge, the point is, he didn't have to tell the police anybody else did it. How can he use it against him if, in fact, he didn't tell them something? * * * He is on cross-examination but not as to what he may not have told the police. He has the right not to say anything. How can they use it against him, the fact he didn't tell them Terry shot him?

THE COURT: The fact that he didn't say something at the time I think is an appropriate area of cross-examination. That right is waived once he takes the stand."

A uniformed, black police officer took the gun from Terry and accused

him of handing the gun to her. However, when she had attempted to hand him the gun, he pushed her hand away. Later, at the stationhouse he told the police that Terry had shot Curly.

*Paul Johnson*

He was a salesman for the Chicago Ridge Gun Shop. Terry King Johnson purchased a .32-caliber pistol from the shop on October 26, 1970.

*For the State on rebuttal*

*Terry King Johnson*

She admitted that it had been her pistol recovered by Officer Hurst at the scene, but stated that she had given the pistol to defendant prior to October 31. She denied living with defendant or driving his car. She had told defendant that Curly was looking for her. She did not know Harold Burkes.

*Wayne White*

He had been a homicide investigator since 1971. He interviewed defendant at the police station after his partner, Officer Lewis, read defendant his *Miranda* rights. Thereafter, defendant never said Terry had shot her husband.

OPINION

■■ Defendant contends the trial court erred when it continued his cause on the State's motion. He argues that the State did not prove that it exercised due diligence to obtain the witness nor that reasonable grounds to believe that the witness could be obtained existed as required by section 103—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(c)). A reviewing court will reverse a trial court's determination to extend only when a clear abuse of discretion can be shown. (*People v. Arndt*, 50 Ill. 2d 390, 280 N.E.2d 230.) We believe that the efforts of the State's investigator including his tracing Terry King Johnson's welfare checks, interviewing her neighbors and relatives, and conversing with Captain Sweeney satisfy the requirement of due diligence. (See *People v. Stephens*, 13 Ill. App. 3d 642, 301 N.E.2d 89.) Similarly, the trial court could consider that the State had exhausted all leads to Johnson's whereabouts within the county and that it possessed credible information that she was residing in Mississippi when it found that there were reasonable grounds to believe that she would be located. Any discrepancies in the investigator's testimony about the name of the town do not indicate an abuse of discretion when weighed against the

unambiguous accounts of telephone conversations with the town's police captain. Consequently, we must reject defendant's initial contention.

■■ Defendant next contends that the trial court erred by allowing the State to use defendant's silence at the time of his arrest for impeachment purposes. The State argues that defendant waived his right against self-incrimination by taking the stand to testify in his own behalf. In *Doyle v. Ohio*, ___ U.S. ___, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the court held the use of defendant's post-arrest silence for impeachment purposes violated the Due Process Clause of the Fourteenth Amendment. The court reasoned that it would be fundamentally unfair to advise a person that he had the right to remain silent and then to allow that silence to be used to impeach an explanation subsequently offered at trial. See *People v. Wright*, 32 Ill. App. 3d 736, 336 N.E.2d 18.

In the instant case, the State inquired during its cross-examination of defendant whether he had implicated Terry King Johnson. Defendant had not testified on direct examination that he had told the police a different exculpatory version, and, therefore, the State's question was not even impeaching of his prior testimony. (See *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643.) Thereafter, the State compounded this error by eliciting through Investigator White that defendant failed to incriminate Johnson after being given the *Miranda* warnings at the police station. *People v. Lewerenz*, 24 Ill. 2d 295, 181 N.E.2d 99.

The State's waiver theory and its reliance upon the pre-*Miranda* cases of *Brown v. United States*, 356 U.S. 148, 2 L. Ed. 2d 589, 78 S. Ct. 622, and *Walder v. United States*, 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354, are unfounded in view of *Doyle's* clear mandate. Moreover, even without *Doyle* the use of an arrestee's ambiguous silence has been held to add a significant potential for prejudicing the jury against a defendant's assertions of innocence. *United States v. Hale*, 422 U.S. 71, 45 L. Ed. 2d 99, 95 S. Ct. 2133.

For these reasons we believe that the use of defendant's silence at the scene for impeachment purposes denied him a fair trial in violation of the Due Process Clause.

We cannot determine the prejudicial effect which the impermissible use of defendant's silence at time of arrest had upon the jury when it weighed the evidence and assessed the credibility of the witnesses. For this reason, we will not consider the merits of defendant's third contention in this appeal, but will await a later judgment unaffected by any unconstitutional taint.

The judgment of the circuit court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DRUCKER and BARRETT, JJ., concur.