2020 IL App (1st) 181622-U

SIXTH DIVISION
November 20, 2020

No. 1-18-1622

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court of |
| | ) Cook County |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 14 CR 18152 |
| | ) |
| ANGEL JARA, | ) |
| | ) Honorable Arthur F. Hill Jr. |
| Defendant-Appellant. | ) Judge Presiding |

JUSTICE GRIFFIN delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court erred when it allowed evidence of defendant's juvenile adjudication of delinquency to be introduced at trial. The error was not harmless.

¶ 2     In ruling on a motion *in limine*, the trial court ruled that defendant's prior adjudication of delinquency could be admitted against him at trial. The State concedes that the trial court ruled incorrectly on the motion *in limine*, but it argues that the error was harmless. In consideration of the totality of the circumstances in the case, we disagree that the error was harmless beyond a reasonable doubt. Accordingly, we reverse, and we remand the case for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant Angel Jara shot and killed Joshua Martinez. Defendant and Martinez had been friends and they supposedly had a dispute over money that defendant owed. The dispute turned into a physical altercation. Defendant's position at trial was that he went home after the fight and, shortly thereafter, Martinez and another man, Martin Chavez, were trying to forcibly enter defendant's home. Defendant testified that he shot at the men in self-defense and in defense of his home and his family.

¶ 5      Martin Chavez testified that he and Martinez accompanied defendant to defendant's home after the fight and that defendant told them to wait outside the house while he went inside and retrieved the money he owed. Chavez testified that, minutes later, defendant returned and opened fire on them from the doorway of the house. The issue for the jury to decide was whether defendant committed first-degree murder when he killed Martinez or whether defendant was acting in defense of himself, his family, and his home as defendant claimed.

¶ 6      Defendant filed a motion *in limine* seeking to prohibit the introduction of evidence about his adjudication of delinquency. When defendant was a juvenile, he was adjudicated delinquent for aggravated discharge of a firearm. The trial court denied the motion *in limine*, explaining that, should defendant choose to testify, the prejudicial effect of the admission of his juvenile adjudication did not outweigh its probative value.

¶ 7      At trial, defense counsel decided to elicit testimony about defendant's adjudication of delinquency on direct examination when defendant testified. Defendant admitted that he was adjudicated delinquent for aggravated discharge of a firearm. Defendant then proceeded to testify consistent with his theory that he acted in self-defense or in defense of his home and his family. The jury found defendant guilty of first-degree murder, and defendant was sentenced to 60 years

in prison. Defendant appeals his conviction, arguing that he was denied a fair trial on the basis that the trial court allowed the introduction of his juvenile record to be used against him.

¶ 8 As far as the trial proceedings are concerned, defendant argues that: (1) the prosecutor engaged in improper conduct during her cross-examination of defendant and her closing argument; (2) his trial counsel was ineffective for failing to make appropriate objections; and (3) the trial court made an incorrect evidentiary ruling about the admissibility of the audio from defendant's 911 call. Defendant also argues that the 60-year sentence imposed in this case for a crime committed by a minor constitutes a *de facto* life sentence in violation of defendant's constitutional rights.

¶ 9                                    II. ANALYSIS

¶ 10 In its response brief on appeal, the State concedes that "the trial court erred in [] denying defendant's motion *in limine* and should have allowed the motion ***." That concession is consistent with well-settled law. See *People v. Villa*, 2011 IL 110777, ¶ 38 (there is a general prohibition against the admission of evidence regarding a defendant's prior juvenile adjudications). The State nonetheless argues that defendant's conviction for first-degree murder should stand because the admission of evidence about his juvenile adjudication was harmless.

¶ 11 In this case, there is no dispute that defendant killed Joshua Martinez. The determinative issue at trial was whether the killing could be considered justified under a theory of self-defense or if the killing could be considered to be mitigated to second-degree murder based on defendant possessing an unreasonable belief that self-defense was justified. When a defendant proceeds on a theory of self-defense, his testimony is typically necessary. See *People v. Hogan*, 388 Ill. App. 3d 885, 893-94 (2009); *People v. Everette*, 141 Ill. 2d 147, 157-59 (1990). When a defendant proceeds under a theory of self-defense, the credibility of a defendant's self-

defense testimony becomes the crucial factor in the jury's assessment of his guilt or innocence. *People v. Suggs*, 50 Ill. App. 3d 778, 782 (1977).

¶ 12 The erroneous admission of defendant's juvenile adjudication in this case prejudiced defendant's only path to establishing his affirmative defense of self-defense or his path to convincing the jury that second-degree murder was the appropriate offense. Defendant's credibility was the critical matter for the jury to evaluate, and the trial court allowed improper evidence into the trial for the sole and express purpose of that evidence being used to demonstrate that defendant was not credible—to impeach him.

¶ 13 If defendant's testimony was believed, a jury could have found that he acted in self-defense or it could have found that he committed second-degree murder rather than first-degree murder. When a defendant claims that he acted in self-defense, he must present some evidence of each of the following elements: (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that there was an imminent danger of harm; (4) that his use of force was necessary; (5) that he actually and subjectively believed a danger existed that required the force applied; and (6) that his beliefs were objectively reasonable. *People v. Gray*, 2017 IL 120958, ¶ 50. Additionally, if a defendant proves the existence of a mitigating factor in the commission of what would otherwise be first-degree murder, such as imperfect self-defense, a trier of fact may find the defendant guilty of second-degree murder. *People v. Jeffries*, 164 Ill. 2d 104, 129 (1995). Because defendant at least arguably submitted testimony in support of the above elements, the only issue for the jury to decide was whether defendant was to be believed. Thus, the erroneous admission of evidence, introduced for the sole purpose of challenging defendant's credibility, significantly prejudiced him.

¶ 14 The State argues that the admission of the juvenile adjudication was harmless because the State was not the party that presented evidence of the juvenile adjudication at trial—because defense counsel introduced the evidence during direct examination of defendant. The State points out that it did not reference the juvenile adjudication during its cross-examination of defendant. It contends that it never argued that defendant's testimony should be rejected *simply* because he had been adjudicated delinquent. The record belies the State's claims that it did not use the juvenile adjudications as a substantial challenge to defendant's credibility.

¶ 15 The State used defendant's juvenile adjudication against him by specifically tying the juvenile adjudication to defendant's credibility in its closing argument. The prosecutor expressly told the jury to consider defendant's juvenile adjudication in determining whether he was credible.

> "you're going to receive instructions that say that evidence of the defendant's prior conviction of an offense may be considered by you only as it may affect his believability of a witness and must (sic) be considered by you as evidence of his guilt of the offense for which he is charged. *He is convicted, an admission of guilty as a juvenile for aggravated discharge of a firearm. You can consider that when considering whether or not he is truthful* because, yes, while he sits here and throughout your deliberation he is presumed innocent but, ladies and gentlemen, he is not presumed truthful." (Emphasis added).

The State specifically used defendant's adjudication of delinquency for aggravated discharge of a firearm against defendant in an effort to convince the jury not to believe his testimony.

¶ 16 In rebuttal in support of its closing argument, the State again told the jury to assess defendant's credibility in light of his juvenile adjudication.

"you get the instruction that a defendant's prior conviction of an offense may be considered by you only as it affects his credibility, that means you are entitled when you are discussing his credibility you're entitled to talk about his prior conviction for aggravated discharge of a weapon."

The State clearly used the trial court's erroneous ruling to its advantage in an effort to urge the jury to disbelieve defendant's testimony about self-defense. The State could not have made any of these arguments as a challenge to defendant's credibility had the trial court correctly excluded evidence of defendant's juvenile adjudication altogether. Again, defendant's only asserted defense in this case hinged *entirely* upon his credibility. The State's argument that there was only a "passing reference to [defendant's] juvenile adjudication" at trial is wholly contradicted by the record. The jury even received specific instructions from the court about how to use the erroneously admitted evidence during deliberations and the jury was instructed by the court that it could use the improperly admitted evidence in the decision making process.

¶ 17    While it is true that defense counsel was the one who elicited the testimony about the juvenile adjudication, the trial court's ruling left the defense with *Sophie's choice*: bring out the evidence on direct examination and try to soften its impact, or try to sneak by without mentioning the juvenile adjudication and risk a worse fate when defendant was subject to cross-examination. See *People v. Patrick,* 233 Ill. 2d 62, 75 (2009) (defense counsel has to employ strategy to choose whether to anticipatorily disclose the defendant's prior convictions to lessen the prejudicial effect the convictions would have on his credibility.) We find it inconsequential which party presented the evidence first. Defendant clearly did not want the evidence of the juvenile adjudication introduced as he attempted to bar the introduction of the evidence by way

6

of a motion *in limine*. He only proffered the evidence on his own accord because of the trial court's denial of his motion *in limine*.

¶ 18    Moreover, the crime for which defendant was adjudicated delinquent as a juvenile is substantially similar to the crime for which he was being tried in this case. The risk of prejudice is much greater in such a circumstance. Defendant's adjudication of delinquency for aggravated discharge of a firearm as a juvenile and the charge in this case of first-degree murder with a firearm require similar unlawful conduct. Compare 720 ILCS 5/24-1.2(a) (West 2016) with 720 ILCS 5/9-1 (West 2016); 730 ILCS 5/5–8–1(a)(1)(d)(iii) (West 2016). The admission of evidence that defendant had previously been found guilty of aggravated discharge of a firearm carried with it a significant risk that the jury would draw negative conclusions from the improperly admitted evidence about defendant's character, his credibility, and his propensity to commit serious crimes with firearms. See *People v. McCoy*, 2016 IL App (1st) 130988, ¶ 66. The evidence by its very nature was intended to discredit defendant in the eyes of the jury, and it was based on an offense he committed as a minor. The evidence did far more to show defendant's bad character than it did to enlighten the jury about his intentions on the night Martinez was killed.

¶ 19    In further support of its argument that the error was harmless, the State contends that the evidence of defendant's delinquency adjudication was cumulative of other evidence in the case. Specifically, right after the shooting, defendant called 911. In his call with the 911 dispatcher, defendant stated that he had been "locked up for a gun before." The State claims that the jury heard the same information about defendant from his own 911 call as it did from the admission of the evidence regarding his juvenile adjudication. Thus, the State contends, evidence of defendant's juvenile adjudication was duplicative of other properly admitted evidence, so the

jury would have heard the regardless of the trial court's ruling on the motion *in limine* and the error was harmless (citing *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008)).

¶ 20    The court admitted the audio evidence of the 911 call for a limited purpose. The jury was instructed that the statements in the 911 call audio were not to be considered for their truth, but for other purposes, such as defendant's state of mind and demeanor. We disagree that defendant's statement about being "locked up for a gun" in the 911 call was equivalent to evidence that he had, in fact, been adjudicated delinquent for the aggravated discharge of a firearm. Evidence of defendant's juvenile adjudication was not merely duplicative of the statement in the 911 call. The 911 call audio did not prove that defendant was necessarily guilty of any prior crime, let alone that he had been adjudicated delinquent for the aggravated discharge of a weapon specifically. "Locked up for a gun before" is a general statement that is susceptible to varying interpretations, whereas definitive proof of an existing adjudication for aggravated discharge of a firearm is not. The admission of the evidence of the "*conviction* for aggravated discharge of a weapon" (as the prosecutor called it during closing argument) was significantly more prejudicial to defendant than his own statement on the 911 call.

¶ 21    The State contends that because the jury heard defendant's admission about being locked up for a gun, "it is *unlikely* that evidence of defendant's juvenile adjudication contributed to his conviction." (Emphasis added). The State's speculation about the likelihood of the jury making the same decision regardless of the error is not the standard. For an error to be deemed harmless, "the State must prove beyond a reasonable doubt that the jury verdict *would have* been the same absent the error." (Emphasis added). *People v. Thurow*, 203 Ill. 2d 352, 363 (2003). The State cannot prove its assertion because it repeatedly instructed the jury to evaluate defendant's credibility in light of his juvenile adjudication, not in light of his 911 call, the content of which

was not even admitted for its truth. It is impossible in this case to parse the record and conjure what effect the juvenile admission had on the jury and conclude that the jury's verdict would have been the same absent the erroneous evidentiary ruling.

¶ 22    Finally, the State argues that the erroneous admission of defendant's juvenile adjudication was harmless because the State otherwise presented ample evidence to challenge defendant's credibility and because the evidence supporting the first-degree murder conviction was overwhelming. The State points to several supposed inconsistencies in defendant's testimony and contends that because defendant was impeached in other ways during trial, the admission of his juvenile adjudication was harmless (citing *People v. Rodriguez*, 2012 IL App (1st) 072758-B, ¶ 62)). The State also points to the totality of evidence introduced at trial and contends that the evidence of first-degree murder was overwhelming, such that the jury would have found defendant guilty regardless of the admitted error.

¶ 23    As to the State's contention that other evidence impeached defendant's credibility to such a degree that the admission of defendant's juvenile adjudication was essentially irrelevant, we disagree. None of the evidence the State relies upon in this regard shows that defendant's credibility was so called into question that the jury could not have believed that he acted in self-defense or in imperfect self-defense. The State's argument on this point presupposes that the jury accepted each piece of evidence that was favorable to the State and disbelieved each piece of defendant's testimony. We cannot know whether the jury believed all the evidence the State introduced that might have contradicted defendant's narrative, and we especially cannot know if the jury would have believed all the State's evidence and disbelieved defendant in the absence of the State instructing the jury to evaluate defendant's testimony through the prism of his prior "conviction."

¶ 24     As to the State's contention that the totality of the evidence in the case was overwhelming in establishing that defendant committed first-degree murder, we again disagree. The State's argument on this point presupposes that the jury believed the testimony of Martin Chavez and that it wholly disbelieved defendant's testimony. Where the case comes down to the trier of fact having to decide whether to believe one witness or the other, the evidence is ordinarily not overwhelming. See, *e.g.*, *People v. Hayden*, 2018 IL App (4th) 160035, ¶ 136; *People v. Fultz*, 2012 IL App (2d) 101101, ¶ 74. This case basically boiled down to a credibility contest between defendant and Chavez. The improper evidentiary ruling in this case risked an improper tipping of the scales against defendant. The State plainly cannot show that the jury's verdict would have been the same absent the error it concedes was made. Thus, the error was not harmless, and defendant is entitled to a new trial.

¶ 25     Defendant raises several other arguments regarding the fairness of his trial and the constitutionality of his sentence. While we see merit in some of the other points defendant raises, our holding that he was denied a fair trial by the admission of his juvenile adjudication is dispositive. Our decision to not address the remaining issues should not be construed as an endorsement of the State's positions on those issues. We are simply choosing not to belabor the point that defendant is clearly entitled to a new trial.

¶ 26                              III. CONCLUSION

¶ 27     Accordingly, we reverse, and we remand the case for a new trial.

¶ 28     Reversed and remanded.